[No. B172846. Second Dist., Div. Three. July 29, 2004.]

SOUTH BEVERLY WILSHIRE JEWELRY & LOAN et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent. EMANUEL GORDON, Real Party in Interest.

COUNSEL

Thelen Reid & Priest, Curtis A. Cole, James H. Turken and Nicole M. Duckett for Petitioners.

No appearance by Respondent.

Lavely & Singer Professional Corporation, William J. Briggs, II and Michael D. Holtz for Real Party in Interest.

Robert S. Gerstein; Huron Maki & Johnson, Henry I. Bushkin and Craig Wu for Bobby Freedman as Amicus Curiae on behalf of Petitioner.

Law Offices of Dennis Holahan and Dennis Holahan for Diamond Dealers Club, Inc., as Amicus Curiae on behalf of Real Party in Interest.

OPINION

**CROSKEY, J.**— ■ In this case (1) a person voluntarily relinquished possession of his property under a consignment, (2) such property was then wrongfully transferred by the consignee to the possession of a third party who took it for value and without notice, and (3) the consignor could have perfected a security interest in the property but did not. Under those circumstances, the *applicable* rule is set out in Civil Code section 3543, which states that "[w]here one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

This case has its origins in written consignments of diamonds, other gems, and jewelry (the goods), by the plaintiff, Emanuel Gordon, doing business as Manny Gordon Trading (plaintiff), to one of the defendants, Richard Maslan & Co., for the purpose of said defendant's inspection and prospective sale of such goods. Also named as a defendant in this case is the individual Richard Maslan (Maslan), whom the complaint alleges is the sole shareholder, director and officer of Richard Maslan & Co. (Maslan Company).

The written consignments specifically state that a sale of the goods by Maslan Company could only be effected, and title would only pass, if and when plaintiff agreed to such sale and rendered a bill of sale. They further state that the goods were delivered to Maslan Company with the understanding that it would have no power or right to pledge the goods. Nevertheless, Maslan did in fact pledge over $6 million worth of the goods to the

other defendants in this case, as security for repayment of over two million dollars in loans from them.[1]

After plaintiff discovered that Maslan had pledged the goods as collateral for loans, and after Maslan Company then refused or was unable to return the pledged goods to plaintiff or pay plaintiff for their value, plaintiff filed this action. Plaintiff alleged causes of action for breach of contract and fraud against Maslan and Maslan Company, and for conversion and recovery of goods against them and the lending defendants.

Criminal charges were brought against the individual Maslan, he was found guilty of grand theft by embezzlement, and this court affirmed his conviction on appeal. The trial court relied on the affirmed conviction to grant plaintiff's motion for summary adjudication of issues. It is that ruling that prompted two of the lending defendants, Top Dollar Financial and South Beverly Wilshire Jewelry & Loan (petitioners), to file a petition for a writ of mandate asking that we direct the trial court to vacate its order granting summary adjudication.

The right of petitioners to writ relief turns on the question whether the common law rule that a thief cannot pass title to stolen property has application in a case where the thief lawfully gained possession of the property by a voluntary transfer from the owner. The trial court concluded such rule is applicable even in voluntary transfer circumstances, applied the rule to this case, and on that basis, granted summary adjudication to plaintiff on his causes of action for conversion and recovery of personal property. We conclude that this was error.

Here, plaintiff and petitioners are both innocent victims of Maslan's embezzlement. However, plaintiff consigned the goods to Maslan Company without availing himself of the protection of provisions in the California Uniform Commercial Code (Commercial Code) that were in effect at the time he transferred possession of the goods. Those provisions would have given plaintiff priority over third party creditors of his consignee who later came into possession of the goods for value and without notice. Thus, under the directive in Civil Code section 3543, as between plaintiff and such third party creditors, plaintiff would be the "sufferer." As discussed *post*, at pages 80–81, plaintiff can only escape that role if he can establish that his consignee was

---

[1] The other defendants in the case are Top Dollar Financial, South Beverly Wilshire Jewelry & Loan, also known as Ben Jewelry, Keshmiri's, Jan Bronson, and Bobby Freedman (collectively, the lending defendants).

generally known by his (i.e., the consignee's) creditors to be substantially engaged in the sale of goods belonging to others.

Plaintiff argues that the Civil Code section 3543 maxim of jurisprudence has no application here because the pertinent provisions of the Commercial Code, which plaintiff failed to utilize, address the priority, or lack thereof, of persons who are creditors *of a consignee* and here, Maslan Company is the consignee whereas it was Maslan in his individual capacity that pawned the subject goods. Thus, plaintiff's argument goes, the lending defendants are the creditors of Maslan, not Maslan Company, and therefore whether plaintiff utilized the Commercial Code provisions or not is irrelevant. This argument, however, simply raises an issue to be addressed by the parties upon return of this case to the trial court. The complaint alleges that Maslan Company is a corporation and that Maslan is its sole shareholder, director and officer. Whether Maslan is the alter ego of Maslan Company such that he was effectively the consignee in his dealings with plaintiff and petitioners, or whether some other reason exists for him to be deemed the effective consignee, are questions for the trial court to resolve upon remand.

## BACKGROUND OF THE CASE

Evidence presented at Maslan's criminal trial showed that he was a jeweler who conducted business in the County of Los Angeles, and that plaintiff operated a wholesale jewelry business in New York City. Between 1992 and 1999, plaintiff consigned various pieces of his inventory to Maslan Company for possible sale. Each item was consigned pursuant to a written contract (a consignment memorandum), which plaintiff routinely used in his business. That memorandum specified that Maslan Company was the consignee. As noted above, this written memorandum provided that a sale of the goods could only be effected, and title would only pass, if and when plaintiff agreed to such sale and rendered a bill of sale (an exception was made if the sale price was greater than that specified in the consignment memorandum), and further provided that the goods were delivered to Maslan Company with the understanding that it would have no power or right to pledge the goods. Pawning of consigned jewelry is not customary within the jewelry business, and plaintiff never permitted his goods to be pawned by a consignee.

By September 1999, plaintiff's records showed that Maslan Company had possession of approximately 75 items consigned from plaintiff, which were worth around $7 million wholesale. Plaintiff made a surprise visit to Maslan Company's place of business. When he asked Maslan to produce those goods, Maslan only presented about 13 items. Maslan admitted to plaintiff that he

had pawned many of plaintiff's pieces. When the missing goods were not returned to plaintiff within 24 hours, plaintiff went to the police.

At the time of Maslan's criminal trial in June 2002, plaintiff's pawned items still had not been returned to him and there was evidence that Maslan was not able to redeem any of those goods. In July 2002, Maslan was convicted on multiple counts of grand theft by embezzlement, and we affirmed that conviction in October 2003.

In prosecuting the instant case, plaintiff filed successive motions for summary adjudication on the causes of action against petitioners, and ultimately the court granted the motion. Petitioners then filed this writ of mandate proceeding, contending the trial court's adjudication order should be reversed because plaintiff's failure to secure his interest in his consigned goods, pursuant to the Commercial Code, required a finding under Civil Code section 3543 that as the negligent innocent person, plaintiff must suffer the loss of title to the goods and that title rests in petitioners.

## *DISCUSSION*

### 1. *Standard of Review*

Code of Civil Procedure section 437c, subdivision (f)(1), states that a trial court may grant a motion for summary adjudication only when such motion "completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." We conduct a de novo review of this matter to determine whether there is a triable issue of material fact associated with the causes of action against petitioners or whether plaintiff is entitled to summary adjudication as a matter of law. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].)

### 2. *Reconciling the Common Law Rule that a Thief Cannot Pass Title to Stolen Property, with Civil Code Section 3543 and the Protective Provisions of the Commercial Code*

Under plaintiff's view of this case, since Maslan's guilt on the charge of theft by embezzlement has already been finally adjudicated, we must apply the common law rule that a thief cannot pass title to stolen property, and we must conclude that petitioners never gained title to the goods that Maslan pawned with them and therefore they are liable to plaintiff for the return of such goods or payment of their value. However, while Maslan's conviction decided the question as to whether he committed theft, that conviction is only the beginning of our analysis in this case, not the end. We must address the precise issue presented by petitioners—whether such common law rule

*should* be applied to those situations where a person voluntarily relinquishes possession of his personal property to another via consignment, with instructions that the property may not be pledged, but fails to utilize provisions of law that would protect his interest in such property if that other person disregards the instructions and pledges the property to a third person who takes it without notice.

We hold that a person who voluntarily relinquishes possession of his property to another in a consignment, and who has the ability to protect his title by means of a Commercial Code filing but does not do so, will not be entitled to the benefit of the common law rule that a thief cannot pass title to stolen property where an innocent third party has taken possession of the property from the consignee for value and without notice. This would be so even when the consignment was made with the directive that the consigned goods not be pledged.

Here, plaintiff could have protected his title to goods he consigned to Maslan Company by utilizing provisions of the Commercial Code that were in effect at the time of his consignments. He failed to avail himself of such protection.[2] Had plaintiff filed a Commercial Code financing statement, *then for purposes of Maslan's creditors*, such as petitioners, title to the goods would have stayed with plaintiff and as between him and those creditors, he

---

[2] At the time of plaintiff's consignments to Maslan Company, now-repealed Commercial Code section 9114, a part of the provisions on secured transactions, gave priority to a consignor over secured parties who were or became creditors of the consignee and who would have a perfected security interest in the consigned goods if the goods were the property of the consignee, so long as the consignor complied with certain requirements, including the provisions in former subdivisions (3)(b) and (c) of Commercial Code section 2326. Otherwise, the consignor was subordinate to persons who would have a perfected security interest in the goods if they were the property of the consignee.

Under the provisions in former subdivisions (3)(b) and (c) of section 2326, consigned goods were deemed to be delivered under a "sale or return" arrangement *insofar as the creditors of the consignee were concerned*, unless the consignor either filed a Commercial Code financing statement, or could establish that the consignee was "generally known by his creditors to be substantially engaged in selling the goods of others," and these provisions were applicable even if there was an agreement that title would remain in the consignor, or an agreement that used the words "on consignment" or "on memorandum." In a "sale or return" arrangement, title to the goods delivered for sale passes to the person receiving them, and he may revest title in the person sending the goods rather than pay for them. Until revested, the goods belong to the person receiving them and may be reached by his creditors.

Current provisions respecting the rights of creditors of a consignee while consigned goods are in the consignee's possession provide that *except when a perfected security interest held by the consignor would have priority over the rights of a creditor of the consignee*, "the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer." (Code, § 9319; see the U. Com. Code Com. 23B pt. 2 West's Ann. Cal. U. Com. Code (2002) foll. § 9319, p. 364; Assem. Com. Com., 23B pt. 2 West's Ann. Cal. U. Com. Code, *supra*, foll. § 9109, com. 6, p. 119.) While not relevant to our decision, it appears that this revised statutory language would not alter the result we reach in this matter.

would be entitled to possession of the goods. Because of his failure to file the financing statement, and unless he can establish that Maslan was known generally by his (Maslan's) creditors to be substantially engaged in selling goods that belong to others, the effect of the former Commercial Code provisions is that title to the pledged goods passed to Maslan Company, and when Maslan failed to redeem such pledged goods, title passed to the lending defendants, including petitioners. The applicable Commercial Code provisions did not make an exception for circumstances where third parties take for value and without notice in cases involving theft.

Moreover, it is *effectively* the directive of Civil Code section 3543 that as between the common law rule upon which plaintiff relies and the former, but applicable to this case, Commercial Code legislation, the latter is the more equitably applied. As noted above, section 3543 provides that "[w]here one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."[3]

"The concept of Civil Code section 3543 is basically an estoppel theory, addressing comparative fault between two innocent victims. It is based upon misplaced confidence by one victim resulting in victimization of the other: 'Misplaced confidence has been held to be negligence within section 3543 and has resulted in the estoppel of a true owner from asserting title against an innocent party. [Citations.]' [Citation.] '[S]ection 3543 . . . "has been applied to bona fide purchasers for value from those who have been clothed with the indicia of ownership. It has been held that although the true owner is guilty of no more than misplaced confidence, such misplaced confidence is negligence within the meaning of section 3543. [Citations.]" ' [Citation.]" (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1752 [54 Cal.Rptr.2d 512].) Here, plaintiff's negligent misplaced confidence consists of his so trusting Maslan Company to not pledge the consigned goods that he failed to file a financing statement.

Whether it was customary for persons in plaintiff's line of business to avail themselves of the secured transactions provisions in the Commercial Code is not an issue. The fact that some or even many diamond and jewelry consignors may transact business without such protection is of no consequence when innocent third persons are involved. Had plaintiff made a

---

[3] Technically petitioner Top Dollar Financial is not an innocent victim of *theft* because the jury in the criminal case against Maslan acquitted him on the counts that were based on his pawning of plaintiff's goods to Top Dollar Financial. Since there was no thievery associated with those pawnings, for that reason alone, Top Dollar Financial's claimed right to plaintiff's goods cannot be found to come within the common law rule that a thief cannot pass title to stolen goods. Instead, plaintiff is left to argue, on remand of this case, that pawning the goods to Top Dollar Financial was a breach of the agreement Maslan Company had with him.

Commercial Code filing, he would have given petitioners constructive notice of his continuing interest in the subject goods and assured his continuing title to those goods.

It was equitable considerations that prevailed in *Carter v. Rowley* (1922) 59 Cal.App. 486 [211 P. 267], a case in which the owner of a car entrusted it to a used car dealer with the instruction that the dealer would bring the prospective purchaser and the owner together before a sale was made. The dealer sold the car without abiding by that instruction and then failed to give the sale money to the plaintiff. Plaintiff sued the buyer of his car to recover possession of the vehicle. The *Carter* court found that while the buyer knew that plaintiff's used car dealer agent was not the owner of the car, the buyer reasonably believed the agent had authority to sell the car. Finding that plaintiff had clothed the agent with apparent or ostensible authority to sell the car, the court affirmed the judgment in favor of the defendant buyer. In doing so, the court stated: "As between two innocent persons, one of whom must suffer, the loss should fall on the principal who has armed the agent with apparent authority and thus has enabled him to obtain the advantage of the person with whom he trades, rather than on the purchaser, where the agent acts within the apparent scope of his authority and there is nothing in the transaction to put the purchaser on notice that the agent is exceeding his authority. [Citation.] The nature and extent of this exception to the general rule that a purchaser gets no title if his vendor has none, or if the vendor has no authority from the owner, are very clearly stated . . . in *Saltus* v. *Everett*, 20 Wend. 267 [32 Am.Dec. 547] [where] the learned author of that opinion says: 'After a careful examination of all the English cases, and those of this state, that have been cited or referred to, I come to this general conclusion, that the title of property in things movable can pass from the owner only by his own consent and voluntary act, or by operation of law; but that the honest purchaser who buys for a valuable consideration in the course of trade, without notice of any adverse claim, or any circumstances which might lead a prudent man to suspect such adverse claim, will be protected in his title against the original owner in those cases, and in those only, where such owner has by his own direct, voluntary act conferred upon the person from whom the *bona fide* vendee derives title, the apparent right of property, as owner, or of disposal as an agent.' " (*Id.* at pp. 489–490.) Former subdivisions (3) (b) and (c) of section 2326 were in harmony with this analysis, as are the provisions of Civil Code section 3543.

In contrast are the cases upon which plaintiff relies—cases where the owner of property or his agent parted with possession *involuntarily*. In *Suburban Motors, Inc. v. State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354 [268 Cal.Rptr. 16], a car was stolen from its owner and then successively purchased by persons who were unaware that the vehicle had

been stolen. The court ruled title belonged to the insurer of the lawful owner who had transferred title to the insurer after being paid for the loss of the car.

Likewise, *A. Benjamini, Inc. v. Dickson* (Tex.App. 1999) 2 S.W.3d 611, (*A. Benjamini*) which is heavily relied upon by plaintiff, affords him no support. That case involved William Dickson, a consignor, his consignee Houston Gems & Appraising (HGA), and Kenneth Rosenbaum, an employee of HGA. Rosenbaum, who had unfettered access to the contents of the consignee's safe, took gems belonging to Dickson from that safe and sold them to a third party, Jonathan's Fine Jewelers, who in turn sold them to another person, A. Benjamini, Inc. The reviewing court acknowledged the rule that "where the real owner, by some act or conduct vests the possession and right to personal property apparently in the seller, he thereby estops himself from setting up a claim to the property as against the purchaser for value without notice. [Citation.]" (*Id.* at p. 613.) "Therefore," said the court, "the question on appeal is whether Dickson's act of consigning the diamonds to HGA clothed Rosenbaum with an indicia of ownership, such that Dickson is estopped from claiming superior right to the diamonds against Benjamini and Jonathan's, good faith purchasers." (*Ibid.*) The appellate record in that case demonstrated that Rosenbaum had business cards that were imprinted with his and HGA's names, and he had conducted transactions with Jonathan's Fine Jewelers in the past by stating he was acting on behalf of HGA and presenting his business card. When he presented the stolen gems to Jonathan's, he was accompanied by a woman whom he represented to be the true owner of the gems. Rosenbaum and the woman represented to Jonathan's that she had inherited the gems and wished to sell them. He did not state he was acting on behalf of HGA, although Jonathan's mistakenly made the assumption that he was. Jonathan's did not verify with HGA that Rosenbaum had authority to broker the gems, nor did it ask the woman for testamentary letters showing ownership. Moreover, Jonathan's issued checks to Rosenbaum as an individual for the gems. Further, there was no evidence that Dickson vested Rosenbaum with possession of the gems for the purpose of selling them. Based on this state of the record, the court concluded Dickson was not estopped from claiming a superior right to the diamonds over Jonathan's and Benjamini. (*Id.* at pp. 613–614.)

Plaintiff asserts the instant case is essentially identical to *A. Benjamini, supra*, 2 S.W.3d 611. He contends Maslan stole consigned goods from Maslan Company, and he argues that the reasoning of *A. Benjamini* compels the conclusion that Maslan was without actual or ostensible authority to deal with goods consigned to Maslan Company and therefore, petitioners have no valid claim to the goods. However, there are at least two problems with this argument. First, Maslan was convicted of stealing goods from plaintiff, not from Maslan Company. Second, plaintiff's argument ignores the substantial factual distinctions between this case and *A. Benjamini*. In *A. Benjamini*, the

consignee's employee had an established business relationship with the initial buyer of the stolen gems such that when the employee acted in a manner that was different from his past transactions with the buyer (the employee did not present the consignee's business card, he did not state he was acting on behalf of the consignee, and he had the payment checks issued to himself), the buyer was no longer entitled to presume (as he mistakenly did) that the employee was acting on behalf of the consignee when he sold the gems. Thus, the buyer could not reasonably claim that he believed the employee had authority from his employer to sell the gems. And since the consignor of the gems had never voluntarily conferred upon the consignee's employee the apparent right to possess the gems as an owner or an agent with authority to sell them, the court rightfully declared the consignor was entitled to have them returned to him. Here, there is no evidence of an established business relationship between petitioners and Maslan, much less one where petitioners mistakenly and unreasonably presumed that Maslan was acting as an agent on behalf of Maslan Company when he pledged goods with petitioners. Moreover, upon remand of this case, the court may accept plaintiffs' argument that Maslan and Maslan Company are effectively, if not legally, identical, such that when plaintiff consigned goods to Maslan Company, he intentionally conferred upon Maslan himself the right to possess the gems as a consignee.

Nor does *Jewelry Co. v. Provident Loan Assn.* (1935) 6 Cal.App.2d 506 [45 P.2d 271] provide any support for plaintiff. There, the evidence was that the plaintiff wholesale jeweler transferred jewelry to one Ernest Kaplan for inspection only. The contract stated in part: "The goods . . . are sent to you for examination and remain our property. Sale takes effect only from date of our approval of your selection and until then the goods are to be held subject to our order, or returned to us on demand." After receiving the goods, Kaplan pledged it for a loan from defendant. The reviewing court held that under those circumstances, title to the goods remained in the plaintiff. Quoting from an earlier case, the court said: " 'So long as the possession of the goods is not accompanied with some indicia of ownership, or of right to sell, the possessor has no more power to divest the owner of his title or to affect it than a mere thief.' " (*Id.* at p. 513, italics omitted.) The court referenced and quoted from now-repealed Civil Code section 2991: " 'One who has allowed another to assume the apparent ownership of property for the purpose of making any transfer of it, cannot set up his own title, to defeat a pledge of the property, made by the other, to a pledgee who received the property in good faith, in the ordinary course of business, and for value.' " (*Jewelry Co.*, at p. 509.)

## DISPOSITION

The petition for writ of mandate is granted and a peremptory writ shall issue directing the trial court to vacate its order of January 5, 2004, and enter a new and different order denying plaintiff's motion for summary adjudication and to conduct further proceedings consistent with the views expressed herein. Petitioners shall recover their costs incurred in these writ proceedings.

Klein, P. J., and Kitching, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied October 13, 2004. Chin, J., did not participate therein.