[No. B172543. Second Dist., Div. Three. May 19, 2005.]

IRVING NELKIN & CO., Plaintiff and Respondent, v.
SOUTH BEVERLY HILLS WILSHIRE JEWELRY & LOAN, Defendant
and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for
partial publication with the exception of parts 5, 6 and 7 of the Discussion section.

**COUNSEL**

Thelen Reid & Priest, Curtis A. Cole, James H. Turken and Nicole M. Duckett for Defendant and Appellant.

Lavely & Singer, William J. Briggs II, Michael D. Holtz and James R. Sterling for Plaintiff and Respondent.

**OPINION**

**CROSKEY, J.**—This case arises from a claim for conversion by the owner/consignor of a number of valuable wholesale diamonds. Two primary issues are presented. First, while the successful plaintiff in an action for conversion is entitled to recover prejudgment interest from the time of the conversion (Civ. Code, § 3336), at what point does the plaintiff's right to

recover such interest end? Second, on the basis of what valuation evidence should such interest be calculated? We answer the first question by holding that even where the plaintiff may have regained possession of the converted goods by use of a bonded writ of possession, plaintiff's right to recover interest will run until entry of a judgment resolving the issue of disputed title; in this case, that question was resolved by the trial court's summary adjudication of the title issue in plaintiff's favor. With respect to the valuation question, we hold that plaintiff's evidence of the prior dealings of the parties and plaintiff's memorandum valuation of goods delivered on consignment was sufficient to establish the value of the converted goods.

We will therefore amend the judgment that was entered in favor of plaintiff so as to reflect the proper award period, affirm the judgment as amended, and remand with directions.

## BACKGROUND OF THE CASE

The factual circumstances in this case are similar in some respects to those in an earlier decision of this court. (*South Beverly Wilshire Jewelry & Loan v. Superior Court* (2004) 121 Cal.App.4th 74 [16 Cal.Rptr.3d 710] (*South Beverly*).) In both actions, the plaintiffs are wholesale jewelry dealers, who, in their capacity as consignors, sued both Richard Maslan & Co., to whom they had consigned jewelry and gems (the goods), and Richard Maslan the individual, the person they alleged to be the sole shareholder, officer and director of Richard Maslan & Co. (Maslan & Co. and Richard Maslan are sometimes referred to herein as "Maslan"). Also sued were an individual and four businesses, to whom Richard Maslan had pledged the consigned goods as collateral for loans made to him by such defendants (the lending defendants). The pledges were made despite the fact that written consignment agreements (consignment memoranda) entered into between the plaintiffs and Maslan & Co. prohibited pledging the goods. In both cases, when the consignor plaintiffs learned of the pledging of their goods, they demanded that Maslan return the goods or pay for them, but Maslan refused or was unable to do so. Richard Maslan was ultimately convicted of grand theft by embezzlement for the use he made of the goods. In each case, the plaintiffs sued Maslan for breach of contract and fraud, and sued Maslan and the lending defendants for recovery of personal property and conversion.

Here, the plaintiff, Irving Nelkin & Co. (plaintiff), consigned goods to Maslan in August and September 1999. During the latter month, plaintiff learned that, contrary to the consignment memorandum agreements between plaintiff and Maslan & Co., Maslan had pledged such goods as collateral for loans. In contrast to the plaintiff in *South Beverly*, the plaintiff here *did* file

California Uniform Commercial Code (UCC) financing statements to protect its goods. As we explained in *South Beverly*, this circumstance is critical to the viability of plaintiff's conversion claim.[1]

In order to address and resolve the issues raised in this appeal by South Beverly, we must review the procedural history in some detail.

### 1. *Plaintiff's Writs of Possession*

Soon after this case was filed in October 1999, plaintiff obtained writs of possession (Code Civ. Proc., § 512.010 et seq.) against lending defendant South Beverly for goods South Beverly had taken as collateral from Maslan. Plaintiff obtained the first writ of possession on November 30, 1999, for some of its consigned goods, and another writ on February 29, 2000 for other goods. To secure the writs, plaintiff was required to obtain bonds in the respective amounts of $230,000 and $270,000. Pursuant to the writs, South Beverly returned the goods to plaintiff.

After plaintiff obtained a summary adjudication on its two causes of action against South Beverly (recovery of personal property and conversion) in November 2002, plaintiff obtained relief from maintaining the writ of possession bonds. The request for relief was made on January 3, 2003, and the court's order dispensing with the bonds was signed and filed on February 13, 2003.

### 2. *The Order Granting Summary Adjudication*

Plaintiff moved for summary judgment or alternatively, summary adjudication, on its causes of action against South Beverly for recovery of personal property and conversion. The hearing on the motion was held on October 28, 2002. The trial court found there were no triable issues of material fact with respect to either cause of action and plaintiff was entitled to summary adjudication as a matter of law on both of them. The trial court's formal order of adjudication was signed and filed on November 18, 2002.[2]

---

[1] Although the appellant in this case, lending defendant South Beverly Hills Wilshire Jewelry & Loan (South Beverly), initially contended that the UCC financial statements were not sufficient protection for the plaintiff, that argument is not pursued in this appeal.

[2] In the November 18, 2002 order, the court made the following legal rulings and recitation of undisputed evidence: (1) on April 15, 1993, plaintiff filed a California Commercial Code financing statement to cover the goods that it had consigned to Maslan and, on February 23, 1998, plaintiff continued the financing statement and such statement would not expire until April 15, 2003; (2) on August 10, August 25, and September 8, 1999, respectively, plaintiff consigned to Maslan & Company (a) an emerald and diamond ring (memorandum value of $36,000), (b) a diamond necklace (memorandum value $140,000), and (c) a diamond necklace (memorandum value $270,000); (3) those three items of jewelry consigned to Maslan &

### 3. *Plaintiff's Statement of Outstanding Issues to Be Tried*

After obtaining the summary adjudication order, plaintiff served notice of its outstanding issues for trial. The issues focused on damages. On the cause of action for conversion, plaintiff claimed prejudgment interest from the time of conversion to entry of judgment; fair compensation for time and money expended in pursuit of the property; and emotional distress damages.[3] On the cause of action for return of personal property, plaintiff included damages for (1) wrongful detention of property from the time plaintiff demanded return of the property to the time the court granted plaintiff's application for writ of

---

Company are owned by plaintiff and covered by plaintiff's UCC financing statement; (4) those three items of jewelry were pawned by Richard Maslan with South Beverly in August and September 1999; (5) plaintiff never gave Maslan permission to pawn or use as collateral for a loan any of the gems and jewelry that it consigned to Maslan & Company; (6) Richard Maslan was convicted of grand theft by embezzlement regarding those three items of jewelry; (7) plaintiff demanded that South Beverly return all items of jewelry that Maslan had pawned with South Beverly, including the three items of jewelry addressed in plaintiff's motion, but South Beverly refused to return them; (8) there was a consignment relationship between plaintiff and Maslan & Company, as indicated in the consignment memoranda regarding the three items of jewelry; (9) all goods that Maslan & Company received from plaintiff between April 1993 and September 1999 were covered by plaintiff's UCC financing statement and continuation statement; (10) the description of goods on the financing statement was sufficiently specific "to reasonably identify the goods described in that finance statement"; (11) because of the financing statement and continuation statement, the goods consigned by plaintiff to Maslan & Company were not transferred to Maslan on a "sale or return" basis under prior provisions of section 2326 of the Commercial Code (this statute is addressed in *South Beverly, supra,* 121 Cal.App.4th at p. 80, fn. 2), and title did not pass to Maslan; (12) section 2403 of the Commercial Code does not apply to South Beverly because it did not purchase the goods from Maslan but rather accepted the goods as collateral for loans South Beverly made to Maslan; (13) the provisions in the Commercial Code applicable to consigned goods "must be read and understood in light of the equitable principle that a thief cannot pass title to property, and there is nothing in the Commercial Code that states its provisions trump this equitable principle"; (14) Maslan's pawning of the goods plaintiff consigned to Maslan & Co. constituted an unlawful conversion that is sufficient to establish that Maslan is a thief, a thief cannot pass title to property, and therefore South Beverly never acquired title to the items of jewelry at issue in the motion; (15) South Beverly's affirmative defenses to this suit do not have merit; (16) plaintiff is entitled to recover possession of the subject three items of jewelry; (17) there are no triable issues of material fact in this suit; and (18) South Beverly's attempt to dispute the material facts are based on its misstatements of Richard Maslan's deposition testimony.

[3] Civil Code section 3336 states: "The detriment caused by the wrongful conversion of personal property is presumed to be: [¶] First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and [¶] Second—A fair compensation for the time and money properly expended in pursuit of the property."

"As a general rule, the value of the converted property is the appropriate measure of damages, and resort to the alternative occurs only where a determination of damages on the basis of value would be manifestly unjust." (*Lueter v. State of California* (2002) 94 Cal.App.4th 1285, 1302 [115 Cal.Rptr.2d 68].)

possession; (2) loss of use of property during the pendency of the litigation; and (3) depreciation in the value of the property, if any, or damages for the loss of profits plaintiff otherwise would have earned from the sale of the goods during the pendency of the suit.[4] Additionally, plaintiff claimed costs of suit, including the costs of the bonds for its writs of possession. Plaintiff indicated it would waive its right to a jury trial and instead let the issues be tried to the court.

### 4. *Plaintiff's Waiver of Trial and Submission of Its Proposed Judgment*

Trial was set for May 1, 2003. However, on April 30, 2003, plaintiff served notice of its intention to waive trial and instead ask the court to (1) enter judgment in its favor and against South Beverly based on the court's November 18, 2002 order granting plaintiff summary adjudication, (2) award plaintiff prejudgment interest, from October 1, 1999 to May 1, 2003, on the value of the jewelry, and (3) award plaintiff costs of suit.

On May 1, the court ordered the trial off calendar pursuant to the request by plaintiff. Objecting to judgment being entered in favor of plaintiff, South Beverly made a motion for nonsuit.

Suffice it to say here that on June 3, 2003, the trial court denied the motion for nonsuit and instructed plaintiff to file a proposed judgment and defendant to file any objections it might have to the proposed judgment.

### 5. *The Judgments, Amended Judgments, and South Beverly's Appeal*

A hearing on the proposed judgment was held on September 16, 2003, whereat the trial court determined that plaintiff should be awarded prejudgment interest up to the date of judgment. Judgment in favor of plaintiff and against South Beverly on the causes of action for recovery of specific property and conversion was signed and filed on November 6, 2003. Plaintiff was awarded possession of the goods, and prejudgment interest at the rate of 7% from October 1, 1999, "to July___, 2003," on the sum of $446,000, which the judgment states is the value of the three pieces of jewelry at issue in the summary adjudication motion. The judgment was amended on December 1, 2003, to award prejudgment interest to November 6, 2003, in the amount of $142,025.27. Thereafter, on December 24, 2003, South Beverly

---

[4] Code of Civil Procedure section 667 provides the basis for plaintiff's cause of action against South Beverly for return of personal property. Section 667 states in relevant part: "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention."

filed this timely appeal from the original (November 6, 2003) and amended (December 1, 2003) judgments. On January 7, 2004, pursuant to stipulation by plaintiff and South Beverly that the amended judgment be corrected to state the award of interest in the amount of $127,959.23, the judgment was amended a second time.[5]

## DISCUSSION

### 1. Standard of Review

On appeal, we review the validity of the trial court's rulings, not the reasons given by the court for those rulings. (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 547 [50 Cal.Rptr.2d 810].) Orders granting summary adjudication are reviewed de novo to determine if the moving party is entitled to such adjudication as a matter of law. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].)

### 2. The Nature of Plaintiff's Causes of Action Against South Beverly

#### a. Conversion

"Conversion is the wrongful exercise of dominion over the property of another." (*Oakdale Village Group v. Fong, supra,* 43 Cal.App.4th at p. 543.) "Conversion is a species of strict liability in which questions of good faith, lack of knowledge and motive are ordinarily immaterial." (*City of Los Angeles v. Superior Court* (1978) 85 Cal.App.3d 143, 149 [149 Cal.Rptr. 320].) In cases where the property changes possession more than once, a plaintiff has a cause of action for conversion if the defendant who is sued for conversion took the property from another converter, and took it with actual or constructive notice that the prior conversion took place. (*Oakdale Village Group v. Fong, supra,* at p. 546.) Here, plaintiff presented evidence of UCC financing statement filings covering the subject goods, thus showing that South Beverly had constructive notice, when it took the pledged goods, that the goods belong to plaintiff. The trial court made a factual finding in plaintiff's favor on that matter, which precluded a finding that South Beverly was innocent in its acceptance of the goods from Richard Maslan when it loaned him money. "In a conversion action the plaintiff need show only that he was entitled to possession at the time of conversion; the fact that plaintiff regained possession of the converted

---

[5] Although the second amended judgment was entered *after* South Beverly filed its notice of appeal, that circumstance is without adverse consequence to South Beverly because of the provisions of California Rules of Court, rule 2(e) which accommodates premature notices of appeal.

property does not prevent him from suing for damages for the conversion." (*Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal.App.3d 737, 748 [282 Cal.Rptr. 620].)

### b. *Return of Personal Property*

■ Under Code of Civil Procedure section 667, when a plaintiff sues to recover possession of personal property, a judgment for the plaintiff may be for the possession of the property, or for its value in the event it cannot be returned. Additionally, the plaintiff may recover damages for the detention of the property. One measurement of damages for a defendant's detention of property is interest on the value of the property from the time of taking, and this measurement is appropriate when the type of property at issue is without substantial use value. "But if the property consists of machinery, automobiles or something else with a readily provable use or rental value, the plaintiff may recover the value of the use from the time of taking to the time he regains possession." (6 Witkin, Summary of Cal. Law (9th ed. 1988) § 1457, p. 931.)

### 3. *The Trial Court Was Presented with Sufficient Evidence to Be Able to Determine Plaintiff's Damages*

The consignment memoranda sent by plaintiff to Maslan for the subject consigned goods bears the following language: "All Merchandise delivered to you will be described and a price stated therefore (the 'stated value') on the reverse side of the memorandum accompanying the delivery of such Merchandise. . . . Within five (5) days following the end of each month, you will notify [plaintiff] in writing of the Merchandise sold during such month. Upon receipt of such notice, [plaintiff] will send you its invoice for the Merchandise sold. The amount payable by you for the Merchandise sold shall be its stated value and said amount shall be due and payable in full within thirty (30) days from the date of the invoice."[6]

■ A trier of fact is entitled to decide evidentiary issues based on both evidence and inferences reasonably drawn from such evidence. Given that Maslan would reasonably expect to make a profit from its sales of plaintiff's consigned goods, a trier of fact could reasonably find that the goods would actually sell for more than their stated value. Thus, this quoted portion of the consignment memorandum effectively acts as evidence of the minimum amount of money the goods would be sold for if they were sold on consignment by Maslan, and evidence of the minimal value of the subject consigned goods.

---

[6] See footnote 2, *ante*, for the court's summary of the several memorandum valuations.

Moreover, from the additional evidence presented by plaintiff, the trier of fact on the issue of the value of such goods could find that it is not reasonable to infer that plaintiff would price goods so high that they would not sell. According to the declaration of Jules Nelkin, one of plaintiff's partners, submitted in support of plaintiff's motion for summary judgment/adjudication of issues, (1) plaintiff has been in business for more than 44 years; (2) Jules Nelkin has conducted business with Richard Maslan for over 20 years in various businesses in which Richard Maslan worked, including Maslan & Co.; and (3) Maslan & Co. had been doing business since August 1999. It is thus reasonable to infer that plaintiff and Jules Nelkin know how to value merchandise consigned to Maslan so that the goods would sell in the market in which Maslan dealt rather than take up permanent residence in Maslan's display cases.

Additionally, Evidence Code section 813 provides that the value of property or a property interest may be shown by, among others, (1) the owner of the property or property interest, and (2) "[a]n officer, regular employee, or partner designated by a corporation, partnership, or unincorporated association that is the owner of the property or property interest being valued, if the designee is knowledgeable as to the value of the property or property interest." (Evid. Code, § 813, subd. (a)(3).) A trier of fact could reasonably conclude Jules Nelkin is knowledgeable about the subject consigned goods.[7]

Despite plaintiff's presentation of this evidence on the value of the goods upon which plaintiff sued South Beverly, the record does not show that South Beverly submitted its own evidence of value in opposition to the motion for summary judgment/adjudication. Therefore, the trial court's adjudication of the value of the goods based on plaintiff's memorandum value was not unreasonable. When the trial court was later asked by plaintiff to determine damages based on the value of the goods, the court reasonably used the adjudicated value of the goods as the basis for determining prejudgment interest.

### 4. *The Claim for Prejudgment Interest*

#### a. *The Parties' Respective Positions on the Matter of Prejudgment Interest*

At the hearing on plaintiff's proposed judgment, South Beverly argued that awarding prejudgment interest to plaintiff would be inappropriate because

---

[7] South Beverly asserts that Jules Nelkin "conceded" at his deposition that a memorandum value of a piece of jewelry does not equate with the actual value of the jewelry and the actual value is established by the invoice. However, the portion of Nelkin's deposition testimony to which South Beverly relies *clearly demonstrates no such thing*. Nelkin was asked whether he ever uses a memorandum form to document a sale to a customer and Nelkin answered he does not. Instead, he "give[s] them an invoice."

plaintiff obtained possession of the goods pursuant to the writs of possession soon after the case was filed. Plaintiff disagreed.

Plaintiff argued that the writ of possession is really just a preliminary determination that a party is entitled to property at issue in a case, particularly where the defendant continues to contest the right of the plaintiff to possession or ownership of the property. Plaintiff asserted that throughout this action it faced the risk that it would be responsible for the value of the goods if judgment were ultimately entered in favor of South Beverly, and therefore it essentially lost the use of the goods during that time. Plaintiff argued that had it sold the goods and the judgment been in favor of South Beverly, South Beverly could have pursued plaintiff for the value of the goods or proceeded against the bonds posted by plaintiff had they still been in effect, and in the latter case, the bonding company would have proceeded against plaintiff for the money it had to pay to South Beverly.

South Beverly responded that there were no preconditions on the writ of possession, but the trial court agreed with plaintiff, saying that because plaintiff faced the prospect that South Beverly might prevail in this suit, plaintiff was not able to make use of the jewelry in the way that plaintiff would if it didn't face such a risk. However, the court observed that neither side had cited any authority that addresses the question whether such a restriction on a plaintiff's use of returned property, during the pendency of a case, entitles the plaintiff to prejudgment interest. The court stated that "in the absence of clear statutory or case law guidance," it would rule that during the course of litigation, a plaintiff acts responsibly when it refrains, on grounds that it might suffer a judgment against it, from selling or otherwise disposing of goods it obtains by means of a writ of possession. The court said that plaintiffs should be encouraged "to act in a responsible way so that ultimate judgment can be complied with [a]nd since the plaintiff has done that, that appears to me to justify prejudgment interest for the entire period through judgment." The court's minute order directed that interest be calculated "according to the value of the jewelry as established in the motion for summary adjudication."

#### b. *Plaintiff Is Entitled to Prejudgment Interest Until the Date That Competing Claims to Ownership or Possession Are Resolved*

As already noted, a cause of action for conversion carries with it a right to damages in the amount of the value of the property converted plus prejudgment interest on those goods, and a cause of action for return of personal property includes damages for detention of the property in that same measurement of prejudgment interest. As it did in the trial court, South Beverly argues on appeal that when it turned the goods over to plaintiff pursuant to

plaintiff's attaining writs of possession, that ended the amount of time for which South Beverly should be charged for prejudgment interest because at that time, plaintiff was no longer deprived of the goods. Like the trial court, we do not agree that return of the goods as mandated by the writs of possession constitutes such a cut-off date.

First, the writs of possession granted to plaintiff were issued as part of a statutory scheme for such writs (Code Civ. Proc. § 512.010 et seq.), and section 512.120 of that scheme makes it clear that plaintiff was *effectively* deprived of the goods until plaintiff's right to them was actually determined. Section 512.120 states that if a plaintiff who obtains a writ of possession "fails to recover judgment in the action, *he shall redeliver the property to the defendant* and be liable for all damages sustained by the defendant which are proximately caused by . . . the levy of the writ of possession, and the loss of possession of the property pursuant to levy of the writ of possession or in compliance with an order issued under Section 512.070 [directing the defendant to transfer possession of the property to the plaintiff]." (Italics added.) The existence of such prospective duty to return the goods to South Beverly effectively deprived plaintiff of the liberty of dealing with the goods as plaintiff saw fit. It is as if plaintiff were a bailee for the goods pending a court's determination of who was legally entitled to possession.

Moreover, even in the absence of section 512.120's provisions, we would find that plaintiff was deprived of the benefit of the goods until a determination of entitlement to them was made by the trial court. Until that time, plaintiff was not able to deal freely with the goods in the manner that it would with goods to which there was no competing claim. For example, in dealing with jewelry to which another person did not claim an ownership or possessory interest, plaintiff would be able to freely sell such goods and use the proceeds as it wished. It could use the proceeds to pay for bonuses for its employees, purchase new stock, improve its facilities, and so forth. In contrast, if plaintiff were to have sold the disputed goods prior to a decision in its favor in this lawsuit, it would have disposed of the proceeds of such sale at its own peril since the trial court might have determined that South Beverly was actually the rightful possessor of the goods. Upon such an adverse decision, plaintiff would have been liable to South Beverly for the value of the goods, and even if plaintiff had sold the goods and kept the proceeds of sale, it might still face a claim by South Beverly that the value of the goods was greater than the price for which plaintiff sold them.

*Conroy v. Flint* (1855) 5 Cal. 327, 328, affords South Beverly no support for its assertion that interest is only awardable for the period of time between when South Beverly wrongfully detained plaintiff's goods and when it delivered them to the plaintiff pursuant to the writs of possession. It is true

that the *Conroy* court stated that "when the property is delivered and accepted pending the suit,—that is, before verdict,—the damages shall be merely nominal." However, that pronouncement by the Supreme Court can be taken to mean when the goods are delivered to the plaintiff with no further claim to them by the defendant. That is not the case here. We also note that *Conroy* was decided 17 years before Civil Code section 3336 was enacted and thus the latter is controlling law if there is a conflict between the two.

In any event, *Conroy* is instructive here. The *Conroy* court rejected the defendant's argument that the plaintiff should only receive nominal damages. The court said that while it was true that the defendant delivered the goods to the plaintiff more than a month before the judgment, "the goods were only delivered after verdict, and it must be assumed that the delivery was in pursuance of the verdict which had already determined the rights of the parties." (*Conroy v. Flint, supra,* 5 Cal. at p. 328.) Here, we have no reason to believe that prior to the verdict-equivalent in this case, the summary adjudication, South Beverly would have delivered the goods to plaintiff and conceded plaintiff's right to possession and ownership. Thus, defendant is not entitled to consideration for plaintiff's having received the goods prior to that time by means of the writs of possession.

■ That conclusion leads to the next issue regarding prejudgment interest—at what point did plaintiff's entitlement to such interest come to an end? Civil Code section 3336 states that the damages caused by wrongful conversion of personal property are presumed to be the value of the property at the time of conversion plus interest "from that time," and Code of Civil Procedure section 667 states a plaintiff is entitled to damages for the defendant's detention of the property. Neither statute specifically states at what point in time the right to such interest ends. While *Stan Lee Trading, Inc. v. Holtz* (C.D.Cal. 1986) 649 F.Supp. 577, 582, held that prejudgment interest is payable to the date judgment is entered, that case is factually distinguishable from this case since it did not involve a summary adjudication of the right to possession prior to the time the court rendered its judgment. ■ We hold that when such an adjudication is made in the plaintiff's favor and all that remains to be determined by the trial court is the amount of the plaintiff's damages, then the plaintiff can be said to be free to deal with the goods, and the proceeds of such goods if they are sold or traded, as plaintiff sees fit. It is then that the defendant's claim of ownership or right to possession legally comes to an end. It is at that point that a conversion plaintiff's right to prejudgment interest should cease.

5.–7.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[*]See footnote, *ante,* page 692.

## *DISPOSITION*

The second amended judgment of January 7, 2004, from which South Beverly has appealed is amended to (1) provide for prejudgment interest for plaintiff up to and including November 18, 2002 (the date of the order of summary adjudication in favor of plaintiff), rather than to November 6, 2003, and (2) delete the calculation of interest in the amount of $127,959.23, and as so amended, is affirmed. Upon remand, the trial court should recalculate the amount of prejudgment interest to be included in the judgment in accordance with the views expressed herein. Plaintiff shall recover its costs on appeal.

Klein, P. J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 10, 2005. Werdegar, J., did not participate therein.