Filed 11/29/22  Madison v. Spielfogel CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KYLE MADISON et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>DANIEL J. SPIELFOGEL,<br><br>    Defendant and Respondent. | B314272<br><br>(Los Angeles County Super. Ct. No. BC626872) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

Lyle R. Mink for Plaintiffs and Appellants.

Nemecek & Cole, Jonathan B. Cole, Marshall R. Cole, and Daniel L. Reback for Defendant and Respondent.

Plaintiffs and appellants Kyle Madison and Marjan Madison (the Madisons) sued defendant and respondent Daniel Spielfogel (Spielfogel), an attorney defending Michael Theodore (Theodore) in a separate suit brought by the Madisons. The Madisons, in their action against Spielfogel, asserted he was liable for conversion because he wrongfully received payments from Theodore that were drawn on accounts into which Theodore had deposited some funds misappropriated from the Madisons. In this appeal from the trial court's grant of Spielfogel's motion for summary judgment, we consider whether the Madisons raised a triable issue of fact as to whether the money Spielfogel received rightly belonged to them.

## I. BACKGROUND

In 2005, the Madisons agreed with Theodore to purchase and remodel "Casa W," an investment property in Cabo San Lucas, Mexico, that was adjacent to "Casa Theodore," a rental property Theodore already owned. Theodore and the Madisons created a limited liability company—Casa W, LLC (the LLC)—to purchase, renovate, and operate Casa W.

Over the next several years, the relationship between Theodore and the Madisons deteriorated as construction costs ballooned and rental incomes disappointed the parties' initial expectations. Theodore requested additional funds from the Madisons, and the Madisons began depositing funds into an escrow account because they felt Theodore was not providing them with sufficient information to justify the amounts requested. Theodore eventually changed the locks on Casa W to prevent the Madisons from accessing the house.

2

The Madisons sued Theodore and the LLC in 2011 (we refer to this suit as the underlying action), and Spielfogel represented Theodore and the LLC from inception of the action through judgment. The Madisons subsequently sued others who had some connection to the underlying action, including Spielfogel.[1]

Spielfogel moved to strike the lawsuit against him pursuant to the anti-SLAPP statute (Code Civ. Proc., § 425.16). The trial court denied that motion and this court affirmed, finding the Madisons' suit did not arise from activity protected by the anti-SLAPP statute but cautioning that "[o]ur narrow holding . . . should not be understood to determine that the Madisons' cause of action against Spielfogel has merit or that Spielfogel lacks other remedies if the Madisons' claim is frivolous or abusive." (*Madison v. Spielfogel* (July 20, 2018, B280588) [nonpub. opn.] (*Spielfogel I*).)

With the matter again before us on appeal from summary judgment, we summarize only the facts pertinent to resolving this appeal.

A.     *The Underlying Action*

Following a 77-day bench trial, the trial court found, among other things, that Theodore deposited the LLC's rental income into his own accounts and commingled the LLC funds with his own personal funds (including income from his investment

---

[1]     The operative complaint in this case also includes a conversion claim against one of Theodore's expert witnesses, Thomas Pastore, and his firm, Sanli Pastore & Hill, Inc. The Madisons separately sued the court-appointed liquidator who took over Casa W in a separate action.

3

property, Casa Theodore). The trial court ruled in favor of the Madisons on most of their claims, including breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and fraud, and ordered an accounting.[2] The trial court determined, however, that Theodore was not liable for conversion because there was no "identifiable fund or corpus" that he "had an obligation to keep intact or [from which he had an obligation to] deliver the specific money in question."

The trial court awarded the Madisons a total of $3,956,750 in damages. Both the Madisons and Theodore appealed that judgment.

### B. *The Madisons' Conversion Claim Against Spielfogel*

The Madisons asserted a single claim for conversion against Spielfogel. The Madisons alleged Theodore paid Spielfogel approximately $309,295 "from bank accounts that contained the undistributed LLC funds due to the Madisons" and continued to pay Spielfogel from these accounts.

Spielfogel moved for summary judgment of the conversion claim against him. He argued the Madisons could not establish all the elements of conversion because Theodore paid for legal services using a credit card issued in his name, Spielfogel received payment from the credit card company, and Spielfogel had no knowledge of how Theodore was paying his credit card bills. Spielfogel also argued the claim was barred by res judicata and collateral estoppel because it was based on the Madisons' conversion claim against Theodore, which the trial court rejected

---

[2]     The trial court ruled in favor of the Madisons on each claim asserted in Theodore's cross-complaint.

4

in the underlying action.  The Madisons, relying on a declaration from certified fraud examiner Anna Leh, argued they could prove conversion because Theodore made payments on the American Express card he used to pay Spielfogel using funds from personal accounts into which he had deposited Casa W rental income.

The trial court granted Spielfogel's motion for summary judgment.  The trial court agreed with the Madisons that res judicata and collateral estoppel did not apply, but the court determined the Madisons still could not establish conversion.  Doubting a conversion claim properly lies under the circumstances ("when [Theodore] pays for his legal bills with a credit card, . . . how is that converting the funds out of . . . the LLC account?"), the court found Spielfogel was entitled to his fees.

## II.  DISCUSSION

We will assume for purposes of this appeal (and contrary to the trial court's ruling in the underlying case) that Theodore converted funds belonging to the Madisons.  There is still no material dispute of fact requiring trial on the Madison's conversion claim *against Spielfogel*.  We shall elaborate, but they have not adduced substantial evidence (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162-163) that could support a conclusion that the money Spielfogel received belonged to them.

"As it has developed in California, the tort [of conversion] comprises three elements: '(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.'  [Citations.]  Notably absent from this formula is any element of wrongful intent or motive; in

5

California, conversion is a 'strict liability tort.' [Citations.]" (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150 (*Voris*).) Subject to exceptions we need not discuss here, a recipient of converted property may be liable for conversion. (*Regent Alliance Ltd. v. Rabizadeh* (2014) 231 Cal.App.4th 1177, 1181; *Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 546, 549.)

Although "the applicability of the conversion tort to a claim for money . . . was once the matter of some controversy, California law now holds that property subject to a conversion claim need not be tangible in form; intangible property interests, too, can be converted. [Citation.] But the law has been careful to distinguish proper claims for the conversion of money from other types of monetary claims more appropriately dealt with under other theories of recovery. Thus, although our law has dispensed with the old requirement that 'each coin or bill be earmarked,' it remains the case that 'money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved.' [Citations.]" (*Voris*, *supra*, 7 Cal.5th at 1151.) In other words, where money is concerned, "the sort of wrong that conversion is designed to remedy" is the "wrongful[ ] exercise[ ] [of] dominion over a specifically identifiable pot of money that already belongs to the [plaintiff]." (*Id.* at 1152-1153; accord *Kim v. Westmore Partners, Inc.* (2011) 201 Cal.App.4th 267, 284 ["A cause of action for conversion of money can be stated only where a defendant interferes with the plaintiff's *possessory interest* in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him"].)

The Madisons' theory that Theodore paid Spielfogel using "specifically identifiable pot of money that already belong[ed]" to them (*Voris*, *supra*, 7 Cal.5th at 1152-1153) rests on their claimed

ability to trace Theodore's payments to American Express as having been made from accounts in which LLC funds were deposited. That is not enough. Even if the Madisons can prove which accounts Theodore used to pay his American Express bill, it is still undisputed that the accounts Theodore used held funds from various other sources, including his own rental property, in addition to misappropriated funds from the Casa W project. On the summary judgment record presented, there is accordingly no substantial evidence on which a jury could rely to find the money that Theodore used to pay American Express was their money, which would be necessary to establish the first element of a conversion claim even under the Madisons' theory of conversion.[3] (*Voris*, *supra*, at 1151 ["'[a] cause of action for conversion of money can be stated only where a defendant interferes with the

---

[3]     In addition, the Madisons' tracing analysis implicitly recognizes that Theodore need not have paid his American Express bill using funds belonging to the LLC. This, too, is a problem for them because they cannot establish they had an interest in the funds American Express credited to Spielfogel at the precise moment those funds appeared in his account; funds cannot *turn out* to be converted based on events occurring after a defendant received them. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452 [neither "legal title nor absolute ownership of the property is necessary" to establish conversion, but the plaintiff must "allege it is '*entitled to immediate possession at the time of conversion*'"].) Put differently, the additional problem for the viability of the Madisons' conversion claim is that they had no interest in Theodore's line of credit with American Express. (Compare *Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 211 [conversion claim viable where defendant wrongfully exercised of dominion over a cardholder's "credit balance with the credit card company"].)

7

plaintiff's *possessory interest* in a specific, identifiable sum"].) Indeed, were the contrary true, the Madisons would have a triable conversion claim against *anyone* Theodore paid using his American Express card during the relevant time—and that is not, and cannot be, the law.  Summary judgment was properly granted for Spielfogel.

## DISPOSITION

The judgment is affirmed.  Spielfogel shall recover his costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.