Filed 1/23/26  LaPay v. The Fairways Homeowner's Association CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

SIMONE MARIE LAPAY,

    Plaintiff and Appellant,

v.

THE FAIRWAYS HOMEOWNER'S
ASSOCIATION et al.,

    Defendants and Respondents.

E082827

(Super. Ct. No. CVPS2202954)

OPINION

APPEAL from the Superior Court of Riverside County.  Kira L. Klatchko, Judge.

Affirmed.

Lubin Pham + Caplin, Namson Pham, and JC Chimoures, for Plaintiff and

Appellant.

Delphi Law Group, Zachary R. Smith, and Nicholas Hepburn, for Defendants and

Respondents.

1

## I.

## INTRODUCTION

In 2018, Lance LaPay (Lance)[1] purchased a ground sub-leasehold interest in a condo (the Property) in Palm Springs. Ownership title of the Property was held in The Lance George LaPay Living Trust (the Trust). Lance is the settlor, original trustee, and sole beneficiary of the trust. He lived in the condo until there was a fire next door in 2020, resulting in smoke damage and damage to the garage. Right after the fire, Lance abandoned his condo and could not be located or reached by the condo homeowner's association, Fairways Homeowner's Association (HOA), or by the condo manager, J.N. Lewis Group dba as Desert Management (Desert Management).

Over a year after the 2020 fire, Lance's sister, Simone LaPay (Simone), became successor trustee of the Trust because of Lance's mental incapacity. As successor trustee, Simone sold the Property in April 2022 and sued HOA and Desert Management for entering the Property to repair the fire-related damage.

Simone, as successor trustee, appeals from summary judgment granted in favor of HOA and Desert Management, and from an order awarding them attorney fees and costs. The trial court found that there were no triable issues of material fact and there was no

---

[1] Since Lance and Simone LaPay share the same last name, we will refer to them by their first names; no disrespect is intended.

evidence HOA or Desert Management[2] committed any wrongdoing or caused any damages.  We affirm the judgment and the order awarding attorney's fees and costs.

## II.

## UNDISPUTED FACTS[3]

HOA is a homeowner's association for the common-interest condo development, known as "The Fairways."  The Property, located at 1654 Fairway Circle, in Palm Springs, is a condo within the Fairways development managed by HOA and Desert Management, retained by HOA.  The owner of the Property is a member of HOA, and the Property is subject to the Fairways' covenants, conditions and restrictions.  In 2020, HOA recorded a second restated declaration of covenants, conditions and restrictions (CC&Rs), which is the applicable version in this case.  (CC&Rs Art. I, §§ 1.28, 1.31, 1.39; Art. II, §2.1; Art. XV, § 15.1.)

A. *October 2020 Fire*

Lance purchased the Property in 2018, under a condo ground sublease of a portion of The Fairways development land used for the condo built on the Property.  Title to the Property was held in the name of Lance George LaPay, as Trustee of the Lance George LaPay Living Trust, dated January 22, 2007.  Lance was named in the trust as settlor, trustee, and sole trust beneficiary.

---

[2]  References to HOA and Desert Management, include, where relevant, HOA's board members and officers, and HOA and Desert Management's agents, and employees.

[3]  This summary of undisputed facts is based on admissible evidence in the record on appeal.

On October 10, 2020, a fire broke out in the garage of an adjacent condo unit, which shared a wall with the Property's garage. Firefighters broke through the garage door and, upon forcing entry through the front door, also destroyed the front door locks. The Property primarily sustained interior smoke damage and fire damage to the garage.

At the time of the fire, Lance was living at the Property. When firefighters and the police responded to the fire, they found Lance outside the Property and discovered he had an outstanding bench warrant. He was therefore taken into custody that same day and released shortly thereafter. Lance never returned to the Property, and could not be located by HOA during its efforts to repair fire damage to the Property. Simone later found him in mid-2021, after the fire-related damage was repaired, with the exception of replacing the cabinets, countertops, and carpet.

B. *Insurance Coverage of Property Damage*

On October 12, 2020, HOA's insurer, Century National Insurance was notified of the fire and property damage. On October 19, 2020, Century National Insurance's third-party administrator, Precision Risk Management (Precision), provided an estimate of repairs, which reflected "the extent of known covered damages to the property" caused by the fire. The estimate for fire-related repairs to the Property "included, among other things, the following: (1) significant repairs to the garage as the fire came through the garage in the amount of $16,220.94 (which included repairs to Common Area framing components); (2) significant repairs to the kitchen as the kitchen was the first access point from the garage in the amount of $12,470.86 (including removal and replacement of batt

4

insulation, drywall, vinyl floor, baseboard, exterior door, door lockset, cabinetry, countertop, sink, plumbing, and aluminum window with seal/prime and wall and ceiling paint); (3) clean and paint walls and ceiling in the Entry/Foyer, Living Room, Entry Closet, Bedroom, Closet, Vanity, and Master Bath; (4) clean, strip and wax the floor in the Entry/Foyer; (5) clean the walls and ceiling in the Bar; (6) clean and deodorize the carpet in the Living Room and Entry Closet; and (7) plywood repairs and painting in the carport."

The Precision estimate cost of fire-related repairs to the Property and adjacent unit totaled $90,998.43, with $36,571.34 allocated to repairs of the Property.

On October 21, 2020, HOA's Board of Directors (Board) met. The Board meeting minutes state that "Management will gather all information pertaining to the fire that occurred in the garage of 1646 Fairways Circle and damaged the garage and interior unit of 1654 Fairways Circle [(the Property)] and report back to the Board." The Board met again on October 27, 2020. Precision's insurance adjuster was present and discussed with the Board the process of restoration and reimbursement of costs for fire-related damage covered under HOA's insurance policy. Thereafter, the Board approved Precision's $90,998.43 estimate amount and authorized Premier Restoration (Premier) to complete restoration repairs to the garages and interiors of both the Property and the adjacent unit. That same day HOA provided Premier with written authorization to start repairing the two properties.

Fire damage repair plans for the Property and adjacent unit were prepared and submitted to the City of Palm Springs and its fire department for a building permit for the repairs. The fire department and city approved the plans in December 2020, and a permit was issued in February 2021.

C. *Notice and Right of Entry CC&Rs*

After the City issued the repair permit, Ashley Herrera, who was an employee of Desert Management until January 2022, attempted to contact Lance to request access to the Property so that the repairs could be performed. Herrera was unable to locate or contact Lance and therefore sought the direction of HOA. HOA's phone number for Lance was no longer in service, and the only address HOA had for him was the Property address. After exhausting all attempts to contact him, the Board directed Herrera to request HOA's legal counsel to try to locate him. Legal counsel was also unable to locate him.

Thereafter, on March 17, 2021, HOA Board met and authorized Desert Management to issue a right-of-entry letter to perform the Property repairs, change the locks, and make entry if Lance did not provide access within the notice time frame.

On April 2, 2021, HOA wrote a letter to Lance, providing him with notice that HOA was seeking to gain access to the Property to make the fire-damage repairs. On April 6, 2021, HOA sent Lance another notice letter requesting he provide access to the Property by April 21, 2021. Both letters were addressed and sent to Lance using his last

known address on the HOA's records, which was the Property address. The second letter was sent by certified mail. Lance did not respond to the letters.

In April 2021, after expiration of the notice-of-entry deadline, Premier entered the Property to perform the interior repairs, including replacing the broken front door lock. Because the front door lock had been broken by the fire department, the door simply opened. Premier made the repairs according to the repair plan and insurance estimate for the Property, except for replacing the lower and upper kitchen cabinetry, kitchen countertops, kitchen sink, and some carpet. These items were not replaced because Lance could not be located to select these "finish items."

On May 3, 2021, Steven Hannegan, who was at that time a Board member and HOA vice president, inspected the repairs Premier had completed and signed a notice of completion, noting that Premier did not replace the lower and upper kitchen cabinetry, kitchen countertops, kitchen sink, and carpet. While at the Property, Hannegan also placed on the front door a combination lock box, containing keys to the new lock, so that Lance, upon his return to the Property, could immediately access the Property by calling the Property manager to obtain the lock box combination. In July 2021, HOA's insurer paid HOA for the cost of the completed repairs from the allocated insurance proceeds.

D. *Simone as Successor Trustee and Sale of the Property*

Simone began searching for Lance in November 2020, with "little luck." In March 2021, Simone contacted Desert Management about her missing brother. It was then that she learned of the October 2020 fire, and that Lance was behind on paying HOA

7

dues and was therefore facing foreclosure. As a consequence, in May 2021, Simone personally paid the outstanding HOA dues to prevent foreclosure on Lance's Property.

On August 18, 2021, Simone filed a verified petition for instructions and orders (Petition) (1) to appoint herself as successor trustee of Lance's living Trust, (2) to remove Lance as trustee of the Trust, and (3) for reasonable reimbursement of funds expended to preserve the Trust property and avoid foreclosure, and payment of Simone's attorney's fees and costs. Simone stated in her Petition that she brought the Petition because Lance could not care for himself or the Property, and had abandoned the Property. Lance suffered from serious mental and physical illness and substance abuse.

According to Simone, Lance was recently arrested, taken into custody, and charged with previously failing to register as a sex offender. During a competency hearing in July 2021, Lance was declared incompetent to stand trial, and was incarcerated in jail in Los Angeles. Simone requested the trial court to remove Lance as trustee of his Trust, appoint Simone as successor trustee of the Trust, and order the Trust to reimburse her from the Trust for expenses she personally incurred on behalf of Lance, including paying unpaid HOA fees and Property taxes.

On January 26, 2022, the trial court granted Simone's Petition and ordered (1) Simone appointed as successor trustee of Lance's Trust, (2) Lance removed as trustee of his Trust, and (3) Simone entitled to reimbursement from the Trust for her expenses from personally paying the Property's unpaid HOA dues and taxes.

8

On February 3, 2022, Simone contacted Desert Management associate manager, Rhianna Beverly, and requested the gate access information to enter the gated condo community, access to the Property, and various information about the Property for purposes of selling it. Beverly responded by email, providing Simone with the gate entry code numbers for Simone and for her real estate broker.

The next day, Simone's real estate broker, Donna Fowler, requested the access code to the lockbox on the Property's front door for purposes of selling the Property. That same day, Beverly provided her with the lockbox combination. Thereafter, Simone entered the Property and discovered renovations had been made to the Property, including (1) removal of carpet in the bedroom, (2) removal of kitchen cabinets, (3) removal of countertops, (4) removal of the kitchen appliances, (5) removal of the front door lower deadbolt, re-keying of the front door upper deadbolt, and removal of the garage entry door deadbolts and locks, (6) movement of the furniture, kitchen appliances, and remaining belongings to the garage, and (7) repair of the hole in the garage wall shared with the adjacent unit that caught fire.

In March 2022, Simone received the fire department's report, which stated that the fire department broke the Property's garage door and made a hole in the shared wall between the Property and the adjacent unit.

On March 16, 2022, Simone listed the Property for sale, and sold it on April 29, 2022, as is, without replacing the cabinets, counters, or carpet.

9

III.

PROCEDURAL BACKGROUND

On July 21, 2022, Simone, as successor trustee of the Trust, filed a complaint against HOA and Desert Management, alleging the following causes of action: (1) breach of governing documents against HOA, (2) negligence against HOA, (3) negligence against Desert Management, (4) conversion against HOA, (5) conversion against Desert Management, (6) nuisance against HOA, (7) nuisance against Desert Management, (8) trespass against HOA, (9) trespass against Desert Management, (10) breach of fiduciary duty against HOA, and (11) declaratory relief against HOA.

The complaint alleges that HOA breached and exceeded its authority under the CC&Rs by not providing reasonable notice of entry into the Property, and by entering for reasons unrelated to the Board's duties, powers, and responsibilities under the CC&Rs. The complaint further alleges that HOA owed a duty to abide by the CC&Rs and not exceed its authority thereunder. HOA allegedly breached this duty by performing unlawful and unauthorized work on the Property, which was owned by an HOA member. In addition, HOA damaged and caused diminution in the value of the Property by entering the Property without reasonable notice or permission, and removing carpeting, cabinets, and granite countertops from the Property.

As to Desert Management, the complaint alleges that Desert Management, including its agents and employees, breached its duty of care to the Property owner by performing unlawful and unauthorized work on the Property; controlling access to the

10

Property; removing the cabinets, countertops, and carpeting from the Property; moving the appliances and furniture to the garage; removing deadbolts and locks from the Property and leaving holes in the doors; and rummaging through Lance's personal belongings.

On July 24, 2023, HOA and Desert Management filed motions for summary judgment or, alternatively, for summary adjudication. The four causes of action against Desert Management generally allege the same theories of wrongdoing as alleged against HOA for negligence, conversion, nuisance, and trespass. As a result, the undisputed facts and law underlying both motions for summary judgment are essentially the same.

The trial court heard and took under submission HOA's and Desert Management's summary judgment motions. On October 26, 2023, the trial court issued a minute order granting both motions for summary judgment, incorporating into the minute order by reference the trial court's detailed written order. A judgment was entered on November 13, 2023, granting HOA's and Desert Management's summary judgment motions.[4] Simone filed a notice of appeal of the judgment.

On December 22, 2023, HOA filed a motion for attorney's fees. Simone filed opposition. HOA filed a reply and supporting amended declaration by Zachary R. Smith. Simone filed opposition to the amended declaration. Because the parties did not request oral argument, the tentative ruling, granting in part HOA's motion for attorney's fees,

---

[4] Simone filed motions for summary adjudication against HOA and Desert Management, but the motions were taken off calendar after the trial court granted HOA and Desert Management's motions for summary judgment.

11

became the trial court's ruling on February 21, 2024. On February 23, 2024, Simone appealed the February 21, 2024, order.

IV.

MOTIONS FOR SUMMARY JUDGMENT

The trial court granted HOA and Desert Management's motions for summary judgment, concluding that Simone, as trustee of the Trust, failed to raise any material issues of disputed fact or legal grounds refuting summary judgment. We agree.

A. *Standard of Review*

"Any party may move for summary judgment in an action if it is contended that the action has no merit. (Code Civ. Proc., § 437c, subd. (a).) A defendant seeking summary judgment bears the initial burden of proving the cause of action has no merit by showing that one or more of its elements cannot be established or there is a complete defense to it . . . . (Code Civ. Proc., § 437c, subds. (a), (o)(2); [citations].)" (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037-1038.)

"On an appeal from summary judgment we review the record de novo. [Citation.] We are not bound by the trial court's stated reasons or rationales. [Citation.] We accept as true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. [Citation.] 'In undertaking our independent review of the evidence submitted, we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if

12

the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue. [Citation.]'" (*Cucuzza v. City of Santa Clara*, *supra*, 104 Cal.App.4th at p. 1039, quoting *Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.)

B. *First Cause of Action for Breach of Governing Documents*

Simone alleges in the first cause of action for breach of governing documents that HOA breached and exceeded its authority under the CC&Rs. She alleges that under CC&R section 9.4, condo owners, not the HOA, are responsible for the maintenance, repair, painting, and replacement of the interior surfaces of their units. Simone further alleges that under CC&R section 9.8, HOA is responsible for damage or loss to any property caused by HOA's gross negligence.

Simone further alleges HOA breached and exceeded its authority under the CC&Rs by re-keying the Property locks, thereby controlling access over the Property, stripping the Property's interior, including removing cabinets, countertops, and carpeting, moving appliances and furniture to the garage, and rifling through personal belongings. Simone further alleges HOA lied that it committed these acts because of the October 2020 fire, whereas the fire department's report only indicates there was light smoke that entered the Property, and there was no fire within the Property. Simone alleges the only damage was to the garage door and the shared wall between the adjacent unit and the Property. Therefore, there was no justification for the substantial Property damage HOA caused after the fire, which was in excess of its authority and in violation of the CC&Rs.

13

Simone further alleges that HOA violated CC&R section 4.9 by not providing reasonable notice of entry into the Property after the fire, and HOA's entry was unrelated to the Board's duties, powers, and responsibilities under the governing documents.

The undisputed facts, however, reveal circumstances that justified HOA and Desert Management's entry and repair of the Property's interior fire-related damage. Simone has not provided evidence raising any triable issues of material fact to the contrary.

    1. Insurance Coverage

Simone, as successor trustee, argues that HOA did not have the right to insure or make repairs to the Property's interior fire-related damages. Simone therefore argues that HOA and Desert Management did not have the right to enter the Property.

Simone has failed to provide any evidence of this. The sublease and CC&Rs authorize HOA to obtain a "walls-in" insurance policy for the Property. A walls-in policy normally provides coverage for damage to the interior of a condo unit.

HOA has provided unrefuted evidence that at the time of the October fire, HOA had a walls-in policy covering the Property's interior, which covered damage to improvements within the Property condo unit.. It is also undisputed that the insurer agreed to cover the Property's interior fire-related damages, and the repairs were completed, except for the cabinets, countertops, and carpet. Although the insurer agreed to cover those items, Lance disappeared and could not be located to select new cabinets, countertops, and carpet. After Simone became successor trustee, she quickly sold the

14

property "as is," instead of delaying the sale until after replacement of the cabinets, countertops, and carpet.

CC&R section 10.1 sets forth the scope of insurance coverage HOA was either required to provide, or had the discretion to provide, to Fairways condo owners. CC&R section 10.1 also designates HOA as the condo owners' representative in all matters relating to insurance. (Art. X, § 101.) CC&R section 10.1 states, as to HOA's insurance obligations, that it must provide a policy of fire and casualty insurance containing the standard extended coverage and replacement cost endorsements for the common area. (Art. IX, § 9.2; Art. X, § 10.1.) CC&R section 10.1 further states that HOA board of directors (Board) shall have the right (but is not required) to limit the scope of coverage to "'bare walls'" coverage, which excludes all personal property within a condo unit and "ceiling coverings, electrical fixtures, appliances, . . . built-in cabinets and countertops, and window treatments, . . . and improvements made by the Owner." (Art. I, § 1.8; Art. X, § 10.1.)

CC&R section 10.2 requires Fairways condo owners to procure insurance to cover "any damage to, or loss of the Owner's Unit, Unit interior, personal property and upon all other property and improvements within the Unit for which the [HOA] has not purchased insurance." (Art. X, § 10.2.) A condo owner is therefore required to maintain insurance only to the extent not covered by HOA insurance. (Art. X, § 10.2.)

It is undisputed that Lance did not personally maintain any insurance coverage for the Property at the time of the October 2020 fire. CC&R section 10.9 therefore required HOA to use the insurance proceeds from its walls-in insurance policy for the covered fire-related damages repairs to the Property. (Art. X, § 10.9.)[5]

Thus, under CC&R sections 10.1, 10.2, and 10.9, HOA had discretion to obtain a "bare walls" policy, and as required by the sublease, HOA provided a "walls-in" insurance policy covering damages to improvements within the interior of the Property. (Art. X, §§ 10.1, 10.2, 10.9; Ground Sublease, § 9.)

Because the Property was covered by a walls-in policy, HOA was required to make the covered fire damage repairs to the interior of the Property. It is undisputed that there was sufficient insurance to do so and that HOA's insurer agreed to cover the cost of the completed repairs. Furthermore, it is undisputed that, under CC&R section 9.6, HOA had discretion to submit a claim to its insurer for covered damage to the Property, which is what HOA did, in compliance with the CC&Rs. (Art. IX, § 9.6 (D) ["If the damage is such as may be covered by any insurance carried by the [HOA], the Board may, in its sole discretion, elect to submit the claim for the cost of repairs to the insurance carrier."].)

---

[5] CC&R section 10.9 states in relevant part: "The Association, acting through its Board, is hereby appointed and shall be deemed trustee of the interests of all named insureds under policies of insurance purchased and maintained by the Association. All insurance proceeds under any such policies as provided for in Section 10.1 of this Article shall be paid to the Board as trustees. The Board shall have full power to receive the proceeds and to deal therewith as provided in this Section. Insurance proceeds shall be used by the Association for the repair or replacement of the property for which the insurance was carried or otherwise disposed of as provided in Article 11 of this Declaration."

### 2. Authority to Make the Repairs

Simone argues that HOA and Desert Management did not have authority to make or authorize the insurance covered repairs to the interior of the Property because there was little, if any, damage. But the undisputed evidence shows that there was fire-related damage to the Property, including damage to the garage and smoke damage to the interior of the Property unit. The damage was covered by HOA's "walls-in" coverage of the Property. HOA's insurer therefore agreed to provide coverage and pay for repairs to the interior. The owner of the Property, Lance, did not have any other coverage and abandoned the Property without taking measures to repair it. Therefore, it is undisputed that under these circumstances, HOA and Desert Management did not violate the CC&Rs by making the repairs covered by insurance, as authorized by the CC&Rs, sections 9.5, 10.1, 10.2, and 10.9. Because HOA provided walls-in insurance coverage for the Property, HOA and Desert Management had authority under the CC&Rs to make the covered fire-damage repairs.

### 3. CC&R Section 9.4

Simone argues that HOA and Desert Management violated CC&R section 9.4, because under that provision the Property owner is responsible for the maintenance, repair, and replacement of the interior surfaces of his unit, including ceilings, doors, sinks, appliances, carpeting, and interior floor surfaces. However, CC&R section 9.5 provides that HOA has a right to enter a condo unit under CC&R section 4.9, and to

17

perform appropriate maintenance and/or repair responsibilities, including when the owner fails to do so, as required under CC&R section 9.4 (A). (Art. IX, § 9.5 (A).)

Under such circumstances, there was no violation of CC&R section 9.4, which does not preclude maintenance and repair of the interior of a unit by HOA and Desert Management when HOA has a walls-in insurance policy covering the interior of the Property, and there is interior damage to the unit, which the HOA's insurer agrees to cover.

### 4. CC&R Section 9.8

Simone also argues HOA and Desert Management violated CC&R section 9.8, but Simone has not provided any evidence of such a violation. CC&R section 9.8 provides: "The Association [HOA] shall not be liable to any Owner or his or her tenants, guests or others, for damage to or loss of any property, or the cost of repair or replacement of any damaged property or portions of such Owner's Condominium *unless such damage is caused by the gross negligence of the Association, its Board, Officers, agents or employees*." (Italics added.)

Although Simone does not allege a cause of action for gross negligence, the definition of gross negligence used for such a claim is instructive here. It requires "'extreme conduct on the part of the defendant.' [Citation.] To constitute gross negligence, misconduct must demonstrate 'either a "'"want of even scant care"'" or "'"an extreme departure from the ordinary standard of conduct."'" [Citations.]' [Citation.]" (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 52.) Although

18

gross negligence often presents a question of fact, gross negligence can be resolved as a question of law when the undisputed facts preclude finding gross negligence. (*Ibid*.) Such is the case here, where the undisputed facts do not support a finding that HOA or Desert Management acted with gross negligence.

Simone alleges in the first cause of action that HOA violated CC&R section 9.8 by committing gross negligence when it caused damage and loss, consisting of "stripping the interior of the Property, including removing cabinets, granite countertops, and carpeting. It also moved appliances and furniture to the garage. Lastly, it rifled through personal belongings."

The evidence is undisputed that HOA and Desert Management were involved in allowing third-party contractors, paid by HOA's insurer, to perform fire-related damage repairs covered by HOA's insurance policy. The covered repairs included removing cabinets, granite countertops, and carpeting. There is also unrefuted evidence that HOA and its insurer did not replace the cabinets, countertops, or carpeting because HOA reasonably concluded that those items should not be completed until the Property owner was located, so that the owner could select those items. Because Lance abandoned the Property and could not be located, those "finish items" requiring the owner's selection were not completed. When Simone became successor trustee, she did not request completion of these items. She instead immediately listed the Property for sale "as is." Under such circumstances, Simone has not provided any evidence of gross negligence.

As to the moving of appliances and furniture to the garage, a reasonable inference can be made that this was done in furtherance of performing the fire-damage repairs, and there is no evidence that such acts constituted gross negligence. As to the "rifling through personal belongings," even if there was evidence of any inappropriate conduct committed by HOA or Desert Management, such acts do not constitute a violation of CC&R section 9.8. There is no evidence of gross negligence or that the Trust owned such items or was damaged in any way. The plaintiff is Simone, as successor of the Trust, not Lance or Simone in their individual capacities. "As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf." (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 691; *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1075.) "Standing is a question of law that courts typically review de novo." (*Loeber v. Lakeside Joint School District* (2024) 103 Cal.App.5th 552, 570.) Only the individuals owning the personal belongings, such as Lance, have standing to make such a claim, and Lance is not a named plaintiff. Because Lance's personal belongings were not Trust property, Simone, as successor trustee, does not have standing to bring a personal claim on Lance's behalf for rifling through Lance's personal property.

There is no evidence that the personal belongings allegedly rifled through were assets of the Trust or that the Trust sustained any damages by the alleged rifling. Because the only plaintiff here is Simone, as successor trustee, it is undisputed that Simone's claim that HOA committed gross negligence by rifling through Lance's personal belongings in violation of CC&R section 9.8, lacks merit.5. <u>CC&R Section 11.3</u>

Simone argues that CC&R section 11.3 (Art. XI, § 11.3; italics added) does not apply because in order to apply, the Property interior must be "covered by insurance *and maintained* by the [HOA]," and the unit was not maintained by the HOA within the meaning of section 11.3. (Art. XI, § 11.3; italics added.) We agree section 11.3 does not apply, but not because HOA did not "maintain" the Property interior when the repairs were made.

Article 11 of the CC&Rs is entitled, "Destruction of Improvements." Section 11.1, entitled " Insurance Proceeds Sufficient," states: "In the event of *damage or destruction to any portion of the Common Area*, and the proceeds of insurance available to the Association are sufficient to effect a total repair or reconstruction of the damaged or destroyed Common Area, *the Association shall cause said Common Area to be repaired, reconstructed and restored* to substantially the same condition as previously existed." (Italics added.) Here, the instant case does not concern repair or reconstruction of damaged or destroyed Common Area.

Section 11.2, entitled "Insurance Proceeds Insufficient," addresses procedures and payment of costs when insurance proceeds are insufficient for such repairs or reconstruction of "*the damaged or destroyed Common area*." (Italics added.) Here, there were sufficient insurance proceeds for the fire damage repairs to the Property interior, and the repairs at issue were not "Common area" repairs or reconstruction.

21

Section 11.3, entitled "Interior Repairs," states: Any reconstruction undertaken *pursuant to the foregoing provisions* [sections 11.1 and 11.2] *shall cover only the exterior and structural components of the damaged or destroyed Units . . . , and such other damage to such Units as may be covered by insurance and maintained by the Association*. If a destroyed Unit is so rebuilt, *the Owner of such Unit shall be obligated to repair and rebuild the damaged portions of the interior* of his or her Unit in a good and workmanlike manner at such Owner's expense substantially in accordance with the original plans and specifications therefor . . . ." (Italics added.)

Here, there was insurance provided by HOA, covering interior fire-related damage to the Property. Although HOA was not required to maintain the Property's interior on an ongoing basis, after Lance abandoned the Property without repairing it, HOA was obligated to maintain it, including securing it from unlawful entry, when repairing the Property's interior fire-related damage.

Simone, however, argues section 11.3 does not apply because the Property's interior was not "maintained" by HOA within the meaning of section 11.3. Regardless of whether the term "maintained" applies here, we conclude section 11.3 does not apply because sections 11.1 and 11.2 concern reconstruction of the <u>common areas, and section 11.3 concerns structural repairs, reconstruction, and related interior repairs "</u>undertaken pursuant to the foregoing provisions" (sections 11.1 and 11.2). Therefore, 11.3 does not apply because the Property repairs did not involve structural repairs or reconstruction of common areas.

22

The instant appeal thus concerns a situation, which is not subject to Article 11 of the CC&Rs.  The HOA and Desert Management entered the Property and made fire-related damage repairs to the Property's interior, not repairs to common areas or structural repairs or reconstruction.  We further conclude that, even assuming section 11.3 does not apply, HOA had authority under CC&R sections 4.9 (A), 9.5, 10.1, 10.2, and 10.9 to enter the Property and repair the fire-related Property damage.

6. <u>Notice of Entry</u>

Simone alleges in the first cause of action that HOA and Desert Management violated CC&R section 4.9.  CC&R section 4.9 provides HOA with the right to enter a condo for "any purposes" reasonably related to HOA's performance of its powers and obligations upon reasonable notice to the owner.  (Art. IV, § 4.9, (A).)  CC&R section 4.9 further provides that "[w]ork may be performed by the [HOA] through its agents or employees, managers, contractors, insurers, vendors, or another third party under such circumstances whether or not the Owner is present."  (Art. IV, § 4.9, (A).)  When such entry is made, it "shall be made with as little inconvenience to the occupant as possible," and HOA shall not be deemed guilty of trespass by reason of any such entry into the condo.  (Art. IV, § 4.9, (C).)  "The [HOA] is responsible for providing notices under this Section only to the Owner," and the owner is prohibited from impeding HOA's right to access to the condo and make necessary repairs, including repairs the owner is required, but fails to perform.  (Art. IV, § 4.9, (A), (D).)

23

The facts are undisputed that HOA and its agents, employees, managers, contractors, insurers, vendors, and other third parties (referred to collectively as HOA) did not violate CC&R section 4.9 when it entered the Property to perform the fire-damage repairs.  HOA fully complied with CC&R section 4.9 notice requirements.

First, the evidence is undisputed that HOA entered the Property in furtherance of performing fire-damage repairs covered by HOA's insurance policy.  Such entry was permissible under CC&R sections 4.9 and 9.5.  Simone argues that HOA and Desert Management violated CC&R section 9.4 subdivision (A), because under that CC&R, the Property owner is responsible for the maintenance, repair, and replacement of the interior surfaces of his unit, including ceilings, doors, sinks, appliances, carpeting, and interior floor surfaces.  However, CC&R section 9.5 provides that HOA has a right to enter a condo unit under CC&R section 4.9, and perform appropriate maintenance and repair responsibilities, including when the owner fails to do so as required.  (Art. IX, §§ 9.4, 9.5.)

Second, the evidence is undisputed that HOA complied with CC&R section 4.9 by providing reasonable notice to Lance before entering the Property.  CC&R section 17.2 requires that notice be delivered to the condo owner at the address last shown on HOA's "books."  (Art. XVII, § 17.2.)  At the time of HOA and Desert Management's entry, Lance, as trustee and sole beneficiary of the Trust, held title to the Property.  HOA searched for him but could not locate him because he abandoned the Property and disappeared right after the fire.  HOA, therefore, in compliance with the CC&Rs,

delivered notice of entry to Lance at the address last shown on HOA's "books," which was the Property address, where Lance had been residing at the time of the October 2020 fire. (Art. XVII, § 17.2.)

In addition, HOA and Desert Management made further efforts to provide notice of entry to Lance. Ashley Herrera, HOA's manager up until January 2022, attempted to contact Lance, to request access to the Property so that the repairs could be performed. Herrera was unable to locate or contact him. Lance's last known phone number was no longer in service, and the only address HOA had for him was the Property address. After exhausting all reasonable efforts to contact him, the Board directed Herrera to request HOA's legal counsel to try to locate Lance. Legal counsel was also unable to locate Lance. Thereafter, on March 17, 2021, HOA Board met and authorized Desert Management to issue a right of entry letter to complete the Property repairs, change the locks, and make entry if Lance did not provide access within the specified time frame.

On April 2, 2021, HOA wrote a letter to Lance at the Property address, providing him with notice that HOA was seeking to gain access to the Property, to make the fire damage repairs. On April 6, 2021, HOA sent Lance another notice letter, sent by certified mail to the Property address, requesting Lance to provide access to the Property by April 21, 2021. Both letters were addressed and sent to Lance using his last known address on HOA's records, which was the Property address. Lance did not respond to the letters. In April 2021, after expiration of the notice of entry deadline, Premier entered the Property to perform the interior repairs. Because the front door lock had been previously broken

by the fire department, the door simply opened.  In April 2021, Premier made the repairs according to the repair plan and insurance estimate for the Property, with the exception of replacing the kitchen cabinetry, countertops, sink, and carpet.  These items were not replaced because Lance could not be located to select these "finish items."

Meanwhile, in March 2021, Simone was also looking for Lance.  She began searching for him in November 2020, with "little luck."  Simone later learned that Lance was homeless, after she filed two missing person reports and after the Palm Springs Police Department did a welfare check on him.  In August 2021, Simone discovered Lance was recently arrested, taken into custody, declared incompetent to stand trial in July 2021, and incarcerated in Los Angeles.

Based on these circumstances, it is undisputed that HOA and Desert Management provided reasonable notice of entry into the Property to perform the fire-damage repairs, in compliance with the CC&R notice requirements.  Furthermore, under CC&R section 9.7, "While the [HOA] shall make reasonable attempts to communicate with the Owner and to obtain the Owner's voluntar[]y access, permission of the Owner shall not be required in order for the [HOA] to gain access to perform its maintenance or repair obligations."  (Art. IX, § 9.7 (A).)  Lance's permission for HOA and Desert Management to enter the Property to perform the fire-damage repairs was not required before entering the Property because HOA made reasonable attempts to provide Lance with notice and obtain voluntary access.

In summary, the undisputed evidence establishes that HOA made reasonable efforts to notify Lance of entry into the Property, such notice efforts complied with the CC&Rs, and HOA's efforts were impeded by Lance abandoning the Property right after the fire and disappearing. This interfered with HOA's efforts to locate him until months after the repairs were performed in March 2021. Lance's abandonment of the Property and disappearance constituted a passive failure to cooperate and interference with HOA's efforts to enter the Property and perform the fire-damage repairs covered by HOA's insurance in violation of CC&R section 9.7(A). Under these undisputed facts, we conclude that HOA complied with the CC&R notice requirements, and HOA and Desert Management were not required to obtain Lance's permission to enter when they made the Property repairs.

7. <u>Foreclosure</u>

Simone argues HOA repaired the Property solely because HOA intended to foreclose on the Property and sell it for a profit. Simone bases this assertion on the fact that, at the time the repairs were made, Lance defaulted on payment of HOA dues. While it undisputed that Lance was in default, there is no evidence that the Property repairs, paid for by insurance, were improperly made because the Property might go into foreclosure. This is pure speculation. In fact, the Property did not go into foreclosure because, when Simone discovered foreclosure might occur, she personally paid the unpaid HOA dues. By that time, the repairs had already been made and the Trust benefited from those repairs, because they were covered by insurance.

27

The undisputed evidence shows the repairs were made because HOA's insurer found that the Property was damaged by the fire, concluded the damages were covered by the HOA's walls-in policy, and agreed to cover the fire-related repairs. There is no evidence the insurer made the repairs and paid for them for the purpose of helping HOA out with a potential foreclosure sale of the Property. As to the incomplete repairs, such as replacing the cabinets, countertops and carpet, the insurer agreed to make those repairs and pay for them, but HOA and the insurer reasonably concluded it would be best not to make those repairs until the Property owner was located and could select those "finish items" in accordance with the owner's personal preferences. However, when Simone became the successor trustee, she quickly sold the Property "as is," without requesting HOA's insurer to complete the "finish items."

We therefore conclude as to the first cause of action that Simone has failed to demonstrate the existence of any triable, material issues of fact, and summary judgment was properly granted as to the first cause of action.

C. *Second and Third Causes of Actions for Negligence*

Simone alleges in the second cause of action for negligence against HOA that HOA owed its members a duty to abide by its governing documents (CC&Rs) and not exceed authority provided thereunder. In the third cause of action for negligence against Desert Management, Simone alleges that Desert Management owed a duty of care to homeowners within the Fairways Community, where the Property is located, to manage the community lawfully. As to both negligence causes of action, Simone alleges that

28

HOA and Desert Management owed a duty not to perform unlawful and unauthorized work on the homeowners' properties or make unauthorized entries.

Simone further alleges that HOA and Desert Management breached their duties by rekeying and controlling access to the Property, including removing deadbolts and locks in doors; removing cabinets, countertops, and carpeting; and moving appliances and furniture to the garage; and rummaging through Lance's personal belongings. This allegedly was all done without permission or authority, and resulted in Simone suffering damages, which included the diminution in value of the Property, loss of use and enjoyment of the Property, and costs and expenses related to moving.

Simone has failed to provide any evidence of negligence. First, as discussed above regarding the first cause of action, it is undisputed that HOA and Desert Management did not violate the CC&Rs or exceed authority provided thereunder when repairing the Property fire-damage, which included the removal of the cabinets, countertops, carpeting, and transfer of the appliances and furniture to the garage. The repairs were authorized under the CC&Rs because HOA's walls-in insurance policy provided insurance coverage for the damage and the insurance paid for the repairs. It is also undisputed that HOA and Desert Management acted reasonably and in accordance with the CC&Rs when repairing the fire-related damage. There is no evidence supporting a finding of negligence against HOA and Desert Management, particularly since under CC&R section 9.8, such a finding requires evidence of gross negligence, and

29

Simone has not provided evidence supporting such a finding, as discussed above regarding the first cause of action.

Second, it is also undisputed that HOA and Desert Management did not breach any duty to abide by the CC&Rs and not exceed authority provided thereunder. Rekeying and controlling access to the Property by placing a lockbox on the Property, after replacing the broken locks and repairing the interior damage, was reasonable and did not prevent Lance or Simone from entering. Simone was provided access upon her request for entry. It is undisputed that the fire department, not HOA and Desert Management, damaged the Property's locks when entering the Property. It is further undisputed that HOA and Desert Management removed the damaged locks, replaced the broken locks, rekeyed them, and expeditiously provided Simone and her real estate agent with the codes needed to enter the Property, when requested. There is no evidence that HOA or Desert Management unreasonably, negligently, or in violation of the CC&Rs controlled Simone's or Lance's access to the Property.

Third, as discussed regarding the first cause of action, there is no basis for Simone's claim that HOA and Desert Management were negligent when they allegedly rummaged through Lance's personal belongings. In addition, as discussed above, Simone, as successor trustee, does not have standing to bring a negligence claim as to Lance's personal belongings, which are not Trust property.

Fourth, Simone alleges that the alleged negligent acts were all done without permission or authority, resulting in Simone, as an individual (not Lance or Simone as successor trustee), suffering damages, which included the diminution in value to the Property, loss of use and enjoyment of the Property, and costs and expenses related to moving. Lance and Simone are not named as plaintiffs in their individual capacities, and therefore cannot recover damages for their personal losses in this action, brought on behalf of the Trust. Finally, there is no evidence that Simone had or currently has any interest in the Property, other than as successor trustee as of January 2022, long after the fire-damage repairs were made in April 2021.

Fifth, there was no evidence that Simone sustained loss of use and enjoyment of the Property or costs and expenses related to moving. There is no evidence she ever resided at the Property. And when Simone became successor trustee in January 2022, she quickly sold it "as is," without requesting or waiting for HOA's insurer to complete the covered fire-related repairs (installing the cabinets, countertops, and carpeting).

We thus conclude Simone has not raised any material triable issues of fact refuting summary judgment in favor of HOA and Desert Management on the second and third causes of actions for negligence.

D. *Fourth and Fifth Causes of Action for Conversion*

Simone alleges in the fourth and fifth causes of action for conversion against HOA and Desert Management that they wrongfully rekeyed the Property's locks and removed from the Property carpeting, cabinets, countertops, and some of Lance's personal

31

property. HOA and Desert Management allegedly lied about its reasons for "gutting the Property," because HOA intended to foreclose on the Property and "flip" it for a profit. Simone alleges she was falsely told the work was related to the October 2020 fire, when the only fire-related damage was to the garage door and shared wall between the Property and adjacent property. Simone alleges she suffered damages which included the diminution in value to the Property, loss of use and enjoyment of the Property, and costs and expenses related to moving.

Conversion is "the wrongful exercise of dominion over the personal property of another. [Citation.] The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119; *Regent Alliance Ltd. v. Rabizadeh* (2014) 231 Cal.App.4th 1177, 1181.) "Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066; *Regent Alliance Ltd. v. Rabizadeh*, *supra*, at p. 1181.)

Here, it is undisputed Simone, individually and as successor trustee, did not own the personal property. Lance did. It is also undisputed, as discussed above regarding the other causes of action, that HOA and Desert Management's disposition of the personal property at issue here did not violate any rights held by Simone, as successor trustee. The unrefuted evidence establishes that the Property sustained fire-related damage, which HOA's insurer agreed to repair, and which the insurer repaired in accordance with HOA's insurance policy and CC&Rs. There is no evidence that HOA and Desert Management performed the repairs for some illicit motive, such as in furtherance of foreclosing on the Property, or that personal property was mistreated or damaged.

Also, as discussed above regarding the second and third causes of action, there is no evidence that Lance, as trustee, or Simone, as successor trustee, suffered loss of use and enjoyment of the Property or personal property, or sustained costs and expenses related to moving. The trial court therefore properly granted summary judgment as to the fourth and fifth causes of action for conversion.

E. *Sixth and Seventh Causes of Actions for Nuisance*

Simone also has not demonstrated the existence of any triable material issues of fact as to the sixth and seventh causes of actions for nuisance against HOA and Desert Management. Simone alleges in the sixth and seventh causes of action that HOA committed a nuisance in violation of CC&R section 15.2,[6] and HOA and Desert

---

[6] CC&R section 15.2 states: "Nuisance. Failure to comply with the provisions of the Governing Documents [CC&Rs] decisions and resolutions of the Association is hereby declared to be and constitute a nuisance, and every remedy allowed by law or

*[footnote continued on next page]*

33

Management violated California law by "unreasonably interfer[ing] with Simone's use and enjoyment of the Property. . . . It completely removed several fixtures, moved appliances and furniture, and rifled through personal belongings."

As discussed above with regard to the first, second, and third causes of actions, it is undisputed that HOA did not violate any CC&Rs, and HOA and Desert Management did not wrongfully commit any of the alleged acts Simone asserts constitute a nuisance under California law and CC&R section 15.2.

F. *Eighth and Ninth Causes of Actions for Trespass*

The eighth and ninth causes of actions for trespass against HOA and Desert Management are identical. "Trespass is an unlawful interference with possession of property." (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1406; *Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 261.) "The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." (*Ralphs Grocery Co. v. Victory Consultants, Inc.*, *supra*, at p. 261.)

Simone alleges that HOA and Desert Management committed trespass by entering the Property without, or in excess of, permission or reasonable notice, "gutted the property, moved fixtures, and rifled through personal belongings." Such actions were

equity against a nuisance shall be applicable against every such result and may be exercised by any Owner, or the Board."

34

allegedly unrelated to the October 2020 fire or damages caused by the fire. The Property allegedly was left in disrepair and its value substantially lowered. "Simone was forced to sell the home at far below its market value as a result."

As discussed above with regard to the first, second, and third causes of actions, it is undisputed that HOA did not violate any CC&Rs, and HOA and Desert Management did not commit any of the alleged wrongful acts which Simone asserts constitute trespass.

G. *Tenth Cause of Action for Breach of Fiduciary Duty*

The tenth cause of action for breach of fiduciary duty against HOA alleges that HOA owes a fiduciary duty to its members, and thus to the trustee of Lance's Trust. That duty under the CC&Rs includes not interfering with or damaging the Trustee's personal or real property and not committing trespass on the Property. HOA allegedly breached its duty owed to the Property owner, causing Simone to suffer damages, which included the diminution in value of the Property, loss of use and enjoyment of the Property, and costs and expenses related to moving.

This cause of action is premised on violations of the CC&Rs, which are unfounded for the same reasons stated above regarding the other causes of action. Simone therefore has likewise failed to provide any evidence raising a triable issue of fact or damages as to the tenth cause of action.

35

H. *Eleventh Cause of Action for Declaratory Relief*

The eleventh cause of action against HOA for declaratory relief alleges that a judicial declaration is necessary to determine whether HOA breached the CC&Rs by rekeying the Property, stripping the Property of fixtures, and rifling through personal belongings.

The essential elements of a declaratory relief claim are (1) there is a proper subject of declaratory relief and (2) an actual controversy involving justiciable questions relating to the parties' rights and obligations.  (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559; *Lee v. Silveira* (2016) 6 Cal.App.5th 527, 546.)  An actual controversy must relate to the legal rights and duties of the parties, and not extend to potential controversies that are conjectural, anticipated to occur in the future, or constitute an attempt to obtain an advisory opinion from the court.  (*Wilson & Wilson v. City Council of Redwood City*, *supra*, at p. 1582; see also *Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885.)

Here, the eleventh cause of action has no merit because there is no existing controversy.  As discussed above in the first cause of action, it is undisputed that HOA did not violate the CC&Rs when repairing fire-related damages to the Property.  It is also undisputed that, as discussed regarding the second and third causes of actions, Simone, as successor trustee, did not suffer any of the alleged damages.

36

V.

ATTORNEY'S FEES

Simone contends the trial court erred in awarding attorney's fees and costs (collectively referred to as attorney's fees). First, she argues that HOA moved to recover Desert Management's attorney's fees, but Desert Management was required to bring its own separate motion for attorney's fees. Simone therefore asserts that the attorney's fees award must be reduced by the amount awarded for Desert Management's attorney's fees. Second, Simone argues that the trial court abused its discretion by arbitrarily applying the reasonableness standard to some, but not all, of HOA's attorneys' work product. We do not find these arguments persuasive.

A. *Procedural Background*

After heavy litigation in the case,[7] HOA and Desert Management became the prevailing parties as a result of the trial court granting their motions for summary judgment against the plaintiff, Simone, as successor trustee. Thereafter, HOA and Desert Management, represented by the same law firm, filed an attorney's fees motion, in which HOA requested "an order setting amount of prevailing party attorney's fees," in the amount of $109,451. HOA's motion requested attorney's fees as the prevailing party under Civil Code sections 1717 and 5975, CC&R section 15.5, and Code of Civil Procedure section 1033.5. HOA's motion for attorney's fees included documentation of time spent litigating the case.

---

[7] This court's clerk's transcript is seven volumes (3,596 pages).

Simone filed opposition, arguing that HOA filed unnecessary and unreasonable pleadings and motions, HOA copy and pasted the summary judgment motions, the trial court should deny the motion for attorney's fees, and if granted, the fees should be reduced. HOA filed a reply brief, and the trial court, on its own motion, continued the motion to allow HOA to provide additional evidence and a more detailed supporting declaration establishing the reasonableness of the attorney's fees. HOA submitted additional supporting evidence, and Simone filed a supplemental response.

Because the parties did not request oral argument, on February 21, 2024, the trial court issued a ruling stating that the tentative ruling was the court's final ruling. The trial court granted HOA's motion for attorney's fees in part. In a detailed minute order, the trial court stated that the parties agreed that, if awarded, attorney's fees should be calculated using the lodestar methodology, that is, the number of hours reasonably expended multiplied by the reasonable hourly rate. (*PCLM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095-1096.) Once that amount is calculated, the court could adjust it to account for factors, such as the novelty and complexity of the case, or the particular skill required by counsel. (*Ibid.*)

HOA requested $109,451 in attorney's fees, increased to $113,572, to account for briefing on HOA's motion for attorney's fees. The trial court concluded the hourly rate for the paralegals was too high and therefore reduced the requested amount for paralegal fees. The court also disallowed fees for clerical time as not compensable. The trial court

38

rejected Simone's argument that the work done for HOA overlapped with work done for Desert Management, resulting in double-billing.

Citing *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1018, the court noted that "A party is not limited to recovering only 'those fees and costs that are related to the absolute minimum effort that might result in prevailing at trial.' Rather, the legal standard is for the court 'to determine what costs and fees were reasonably and necessarily related to the successful claim.'" The trial court concluded that Simone had not met her burden to demonstrate that any specific attorney's fees were excessive or that the invoices were padded. The court found that the invoices did not reflect that the billed hours were unnecessary, unreasonable, or duplicative. The court rejected Simone's arguments that the attorney's fees charged in connection with a sanctions motion, demurrer, and mediation were unreasonable or unnecessary.

The court reduced the lodestar total to $102,547.50, by reducing the paralegal hourly rate and deducting the fees for clerical work. The court also did not add the additional fees requested for supplemental briefing on HOA's motion for attorney's fees, because HOA was at fault for not providing in the first instance legible evidentiary support for its motion.

B. *Analysis*

Civil Code section 1717, subdivision (a) provides in relevant part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties

or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." "Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit." (Civil Code § 1717, subd. (a).)

Here, CC&R section 15.5 provides for attorney's fees. CC&R section 15.5 states: "Attorney's Fees. In the event the Association, or any Owner, shall commence litigation to enforce any of the covenants, conditions or restrictions of this Declaration or any other Governing Document, the prevailing party in such action shall be entitled to actual attorney's fees and costs reasonably incurred." In addition, Civil Code section 5975, subdivision (c) states: "In an action to enforce the governing documents [CC&Rs], the prevailing party shall be awarded reasonable attorney's fees and costs." (See also Code of Civ. Proc. §§ 1032, subd. (a), 1033.5.)

HOA argues in its attorney's fees motion that, "[w]hile it is true that some of the causes of action against the Association do not authorize an award of fees and the Association's attorneys also represented Desert Management, the Court should not apportion any of the fees. Apportionment is not required when the claims for relief and/or liability of the parties are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." We agree, as did the trial court. (See *Akins v. Enterprise Rent-A-Car Co. of San Francisco* (2020) 79 Cal.App.4th 1127, 1133 ["When the liability issues are so

40

interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not, then allocation is not required."]; *Cruz v. Ayomloo* (2007) 155 Cal.App.4th 1270, 1277 ["Allocation of fees incurred in representing multiple parties is not required when the liability of the parties is 'so factually interrelated that it would have been impossible to separate the activities . . . into compensable and noncompensable time units. . . . . [Citation.]'"].)

As HOA explains in its motion for attorney's fees, all of the causes of action against HOA and Desert Management were premised on alleged violations of the CC&Rs. The defenses for each cause of action were the same: the Property entry to make the repairs was authorized under the CC&Rs. The claims against HOA and Desert Management were thus inextricably intertwined. Desert Management was sued as HOA's agent. Desert Management's duties originated from duties owed by HOA under the CC&Rs. Desert Management's defense was the same as that of HOA. Therefore, bringing separate attorney's fees motions and apportionment of HOA and Desert Management's attorney's fees is not required.

The trial court's detailed, thorough order granting in part and denying in part HOA's motion for attorney's fees is well reasoned and supported by the record. Simone has not demonstrated that the trial court's findings, conclusions, and ruling on HOA's motion for attorney's fees were unfounded or an abuse of discretion.

41

## VI.

## DISPOSITION

The judgment is affirmed.  HOA and Desert Management are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON         
Acting P. J.

We concur:


FIELDS           
          J.


RAPHAEL        
          J.